FERNANDO MALDONADO PÉREZ, querellante y recurrido, *v.* LAS VEGAS DEVELOPMENT CO., INC., querellada y peticionaria; DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR, organismo administrativo recurrido:

*Número:* O-80-505          *Resuelto:* 20 de octubre de 1981

*Hermenegildo Colón Vázquez* y *Federico Rodríguez Gelpí*, abogados de la peticionaria; *Ángel M. Villamil Rodríguez*, abogado de los recurridos.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

La recurrente, Las Vegas Development Co., Inc. ("la contratista") le vendió una casa al recurrido ("el dueño") el 2 de febrero de 1967. Más de nueve años nueve meses más tarde, el 26 de noviembre de 1976, el dueño se querelló

ante el Departamento de Asuntos del Consumidor ("DACO") sobre supuestos vicios de construcción de que adolecía su casa. DACO determinó que existen grietas mayores de 1/16" de amplitud en el piso de terrazo de la sala y el comedor y que éstas se van profundizando y enanchando cada día más. Concluyó la agencia que la contratista le respondía al dueño bajo las disposiciones del Art. 1483 del Código Civil.

El Art. 1483 del Código Civil, 31 L.P.R.A. sec. 4124, dispone:

> El contratista de un edificio que se arruinase por vicios de la construcción, responde de los daños y perjuicios si la ruina tuviere lugar dentro de diez años, contados desde que concluyó la construcción; igual responsabilidad, y por el mismo tiempo, tendrá el arquitecto que la dirigiere, si se debe la ruina a vicios del suelo o de la dirección.
>
> Si la causa fuere la falta del contratista a las condiciones del contrato, la acción de indemnización durará quince años.

Hoy nos toca expresarnos, dados los hechos de este caso, en mayor detalle que cuando lo hicimos en *Federal Ins. Co.* v. *Dresser Ind., Inc.*, 111 D.P.R. 96 (1981), sobre el significado y límites del vocablo "ruina".

■ Ya no se argumenta que la ruina de un edificio ocurre únicamente cuando se compromete su solidez o estabilidad. La ruina parcial, el derrumbe de uno de los elementos principales de la estructura, da base igualmente para invocar el Art. 1483. J. Cadarso Palau, *La Responsabilidad Decenal de Arquitectos y Constructores*, Ed. Montecorvo, Madrid, 1976, págs. 123-124. Un tercer paso en el desarrollo del concepto ocurrió al extenderlo al peligro de ruina, a la degradación parcial que comprometa la existencia de la obra o de parte esencial de la misma. Cadarso Palau, *op. cit.*, pág. 128. La última etapa la representó la teoría de los "graves defectos", o sea, aquellos que, sin llegar a amenazar de ruina elementos vitales del edificio, afectan seriamente su utilización y disfrute, ocasionan su

ruina funcional. D. Rubino, *Dell' Appalto*, Soc. Ed. del Foro Italiano, Roma, 1969, págs. 286–290; S. de 27 de febrero de 1975 (Esp.), XLII, Vol. 1, Aranzadi, pág. 551; S. de 16 de diciembre de 1977 (Esp.), XLIV, Vol. 2, Aranzadi, pág. 3660. Debe observarse, no obstante, que en ninguna de estas etapas se presume que el término "ruina" abarca todo género de vicios de construcción. Aun la acepción más lata presupone la existencia de defectos graves y de otros que, por no serlo, no están comprendidos dentro del marco del Art. 1483.

Es a la luz de este mismo hecho que deben entenderse otros criterios establecidos en el curso del desarrollo de las cuatro etapas referidas. Los criterios deben interpretarse únicamente dentro del contexto de tales etapas y de las circunstancias que las produjeron. No presentan dificultad alguna en este sentido criterios tales como el de la amenaza a la seguridad pública o a la estabilidad del edificio, con el consiguiente daño considerable al propietario. Ambos están vinculados claramente a la noción de ruina, total o parcial, o al peligro de que ésta suceda. Mayor dificultad generan otros criterios de uso común para definir lo que constituye un vicio de construcción. Nos referimos especialmente a los que les imprimen a los defectos en cuestión tal categoría cuando tornan la obra en impropia para el uso a que se le destina o cuando exceden la medida de las imperfecciones que cabe esperar en una construcción. J. Herrera Catena, *Responsabilidades en la Construcción*, Gráficas del Sur, Granada, 1974, Vol. 1, pág. 263. Estos últimos criterios también entrañan la existencia de graves defectos. Rubino, *op. cit.*, pág. 289. Es por tal motivo que hay que manejar con especial cuidado el concepto de que existe un vicio de construcción si el defecto excede la medida de las imperfecciones que cabe esperar en una construcción. Si el criterio se aplica aislada y literalmente, el Art. 1483 abarcará de por fuerza casi todo género de defectos. La gravedad del defecto y las circuns-

tancias en que se produce son condiciones inherentes a la justa aplicación de esta norma.

■ La primera conclusión derivable del estudio del término "ruina" es en consecuencia que existen grados de defectos y que la garantía decenal alcanza únicamente a aquellos de particular significación, a aquellos vicios o imperfecciones que causan los efectos que se quisieron evitar en alguna de las cuatro etapas aludidas: la ruina total, la ruina parcial, la amenaza de ruina o la ruina funcional. La apreciación de la gravedad del defecto tiene necesariamente que hacerse caso por caso, si es que el legislador no se pronuncia, y dependerá fundamentalmente del estudio evolutivo del arte de la construcción.

■ Un segundo elemento del término "ruina" que debe identificarse es el de la presunta duración del elemento concernido de la obra. Cadarso Palau, *op. cit.*, págs. 138–139, ha escrito sobre este extremo:

. . . entiendo que el criterio básico está en la larga duración de las obras de que se trata. Desde esta perspectiva, deben incluirse los defectos importantes que afecten a aquellos elementos o partes que, con la obra misma, estén destinados a larga duración. Todo elemento estructural o parte maestra está, evidentemente, como la obra inmobiliaria misma, destinada a larga duración. Pero no todo elemento permanente tiene necesariamente que contribuir a la solidez o estabilidad, sin que, por ello, haya una razón suficiente para excluirlo del ámbito de protección que para el dueño representa el sistema de la responsabilidad decenal. Ahora bien, aquí se impone una delicada labor de delimitación (que no puede sino remitirse a la apreciación judicial, caso por caso) de lo que debe ser considerado como edificio o partes importantes del edificio (en el sentido de la expresión francesa "gros ouvrage"), ya que no todo accesorio del mismo ha de estar destinado a larga duración. Siendo muy difícil formular con mayor precisión el criterio, cabría decir, con Soinne (93), que deben quedar excluidas aquellas construcciones o instalaciones secundarias, de mínima importancia, que es usual renovar en una casa destinada a vivienda y que no presentan ningún carácter anormal,

excepcional o incluso poco frecuente en la vida de una construcción. En estos casos, es indudable que el plazo decenal de garantía resultaría excesivo (estamos, en tal sentido, ante una cuestión de medida), y, sin negar absolutamente una responsabilidad posterior a la recepción, ésta habrá de ser, no la decenal, sino, caso de ser reconocida legislativamente, la más breve que, para casos similares, se ha establecido en Francia a partir de 1967, y que es conocida como garantía bienal. Ha de añadirse, también, que no estaría justificada la subsistencia por diez años del régimen presuntivo que la responsabilidad decenal implica.

Los defectos, aunque sean de importancia, que afecten partes de la obra destinadas a una duración menor de diez años no constituyen vicios de construcción dentro del significado del Art. 1483. Pueden concebiblemente, según el caso particular, constituir tales defectos por cierto tiempo, pero no por la totalidad del plazo decenal. De ahí es que surge entonces el dilema de si han de quedar desamparados los legítimos intereses del consumidor. La contestación es que no tienen que quedar desamparados, que existen métodos para lograr un equilibrio justiciero entre las expectativas de los consumidores y las de la industria de la construcción, pero que la solución no estriba en seguir expandiendo judicialmente *ad infinitum* el alcance del Art. 1483. Francia y Puerto Rico ofrecen precisamente ejemplos de soluciones preferibles.

Las leyes de 3 de enero y 22 de diciembre de 1967, junto al decreto de 7 de julio de 1967, establecieron en Francia dos clases de garantía contra los vicios de construcción. Se mantuvo el plazo decenal para las obras de mayor importancia y se creó un plazo bienal para los de menor monta. Se intentó a la par definir ambos tipos de obra mediante el uso de ejemplos específicos. Los muros y el techo de una casa fueron clasificados, entre otras, como obras protegidas por la garantía decenal. Las puertas, las ventanas y partes análogas de los edificios quedaron sujetas a la garantía bienal solamente. Mazeaud y Mazeaud,

*Traité Théorique et Pratique de la Responsabilité Civil*, 6ª ed. (por A. Tunc), Ed. Montchrestiens, 1970, págs. 94–100, 133 *et seq.*

En Puerto Rico se ha estructurado un sistema aun más flexible que el francés. En virtud de la facultad conferida al Secretario de Asuntos del Consumidor por la Ley Núm. 130 de 13 de junio de 1967, según enmendada, 17 L.P.R.A. sec. 503(c), éste aprobó un reglamento, 17 R.&R.P.R. 503-19, para regir el negocio de la construcción de viviendas privadas, el cual entró en vigor el 17 de septiembre de 1977. El Art. 10(j) enumera una larga serie de defectos de construcción y especifica el término en que deberá notificarse al contratista o al urbanizador. Conforme el Art. 7 éste deberá prestar una fianza que "se mantendrá vigente por el término de dos (2) años a partir de la fecha del otorgamiento de la escritura de compraventa del comprador original de la vivienda. Esta fianza o seguro garantizará los gastos de reparación y corrección de defectos de construcción al comprador original o compradores subsiguientes que hayan adquirido dicha vivienda dentro de los dos años siguientes a la fecha del otorgamiento de la escritura de compraventa del comprador original. . .". De la totalidad del Art. 10(j) y del Art. 7 transcrito se desprende que, en ausencia de disposición expresa en contrario, el término para la notificación al contratista comienza a contar a partir del otorgamiento de la escritura original. El Art. 10(j) también provee que en caso de no mencionarse un período distinto de notificación, ésta deberá hacerse dentro de dos años, lo cual concuerda con la duración de la fianza. No existe indicación en la ley o el reglamento reveladora de intención alguna de que la notificación exigida responda al único fin de poder recobrar contra la fianza. Si así fuese, ¿por qué es que en tantos casos se fijan términos menores? El esquema legislativo y

reglamentario obedece más bien al reconocimiento de que es excesivo permitir ciertas reclamaciones demasiado tiempo después de la recepción de la obra. ([1])

El Art. 10(j)(8) trata específicamente del caso de los pisos y estima en su apartado (b) que constituyen defectos de construcción las "grietas mayores de 1/16″ de ancho o de menor amplitud que afeen la terminación del piso", siempre que se notifiquen dentro del mencionado término de dos años. El citado reglamento no es de aplicación directa a este caso, ya que su vigencia es posterior aun a la fecha en que se presentó la querella administrativa. El reglamento es, de todos modos, de especial importancia para guiar la discreción judicial en la apreciación de la gravedad del defecto. El Art. 10(j) se formuló claramente "tomando como base los principios técnicos de ingeniería, tipo, clase y/o [*sic*] método de construcción . . .", norma que a todas luces rige la discreción del Secretario al añadir otros defectos no enumerados en el artículo. Las clasificaciones comprendidas en el Art. 10(j) deben merecerle gran peso a la Rama Judicial aun en casos en que no aplique el referido Reglamento de DACO por razón de su fecha de vigencia.

Resolvemos, por tanto, que las grietas del piso surgidas en este caso a los casi diez años de construirse la vivienda no están comprendidas dentro del concepto de ruina encarnado en el Art. 1483. El defecto no reviste la

---

([1]) La peticionaria arguye que en vista del Art. 17 de la Ley Núm. 130 de 13 de junio de 1967 (17 L.P.R.A. sec. 517) y del Art. 25 del Reglamento, lo expresado en el Art. 10(j) no afecta las reclamaciones bajo el Art. 1483 del Código Civil. Así es, mas esto en nada cambia el resultado por no tener el recurrido en este caso específico acción alguna bajo el Código Civil. Nada de lo expresado en esta opinión se interpretará como que restringe el incuestionable derecho del consumidor a expandir contractualmente el alcance del Art. 1483. El contratista no puede contraerlo, por impedirlo el interés público, pero el consumidor puede ampliarlo. Mazeaud y Mazeaud, *op. cit.*, II, pág. 137.

gravedad necesaria. El tiempo de su aparición, además, fue tardío.

*Se revoca la sentencia recurrida y se desestima la querella.*

El Juez Asociado Señor Martín no intervino.