NELLY FANTAUZZI DE LÓPEZ, querellante y recurrida, *v.* PLEASANT HOMES, INC., y FRANK MUNARRIZ, querellados y peticionarios.

*Número:* O-81-331        *Resuelto:* 15 de junio de 1982

*José P. González García,* abogado de los peticionarios; *Vidal Rodríguez Amaro,* abogado de la querellante recurrida; *Héctor Febo Serrano,* abogado del Departamento de Asuntos del Consumidor.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Consideramos en este recurso si la responsabilidad por vicios de construcción establecida en el Art. 1483 del Código Civil, 31 L.P.R.A. sec. 4124, se extiende a las edificaciones prefabricadas.

José M. López, esposo de la recurrida Nellie Fantauzzi de López, adquirió de la recurrente Pleasant Homes, Inc. —representada por el Sr. Frank Munarriz— (¹) por la cantidad de $16,000 un "chalet-terraza" prefabricado. La instalación se llevó a cabo por el contratista querellado José Ramón Cabral mediante contrato con López por la cantidad de $3,800. Posteriormente, la recurrida se quejó ante el Departamento de Asuntos del Consumidor (DACO) por alegados vicios de construcción y solicitó se ordenara a la vendedora y al contratista que corrigieran los defectos. DACO investigó la querella, celebró vista y finalmente emitió una resolución en la que ordenó solidariamente a la vendedora Pleasant Homes, Inc. y/o Sr. Frank Munarriz y

---

(¹) El señor Munarriz falleció el 22 de abril de 1982, según se desprende de una moción en la que se solicita la sustitución de parte, radicada ante este Tribunal bajo la Regla 42 del Reglamento del Tribunal Supremo, y fue sustituido en el presente recurso por su viuda Olga E. Álvarez Domínguez y sus hijas Caridad C. Munarriz Álvarez y Elena de la E. Munarriz López.

134

al contratista, que corrigieran las imperfecciones de construcción o en su defecto compensaran solidariamente a la querellante con la cantidad de $13,280.56. No conforme con esta resolución y orden, los querellados Pleasant Homes, Inc. y Frank Munarriz acudieron en recurso de revisión ante el Tribunal Superior, el cual denegó la expedición del auto. Decidimos revisar.

El Art. 1483 fija la responsabilidad del contratista y del arquitecto en los siguientes términos:

> El contratista de un edificio que se arruinase por vicios de la construcción, responde de los daños y perjuicios si la ruina tuviere lugar dentro de diez años, contados desde que concluyó la construcción; igual responsabilidad, y por el mismo tiempo, tendrá el arquitecto que la dirigiere, si se debe la ruina a vicios del suelo o de la dirección.

> Si la causa fuere la falta del contratista a las condiciones del contrato, la acción de indemnización durará quince años.

¿Es el "chalet-terraza" de los esposos López-Fantauzzi un edificio según el Art. 1483? ¿Constituyen "ruina" los desperfectos aquí implicados? ¿Es el prefabricante un constructor bajo el Art. 1483?

■ En *Federal Insurance Company* v. *Dresser Industries*, 111 D.P.R. 96 (1981), expresamos que el vocablo "edificio" utilizado en el Art. 1483 tiene un significado amplio y que incluye aquellas construcciones accesorias directamente relacionadas con el inmueble e incorporadas al mismo íntima y permanentemente. La obra que nos ocupa en este caso —un "chalet-terraza"— claramente es un edificio según lo hemos definido. Esta construcción es una obra mayor de larga duración que quedó incorporada al inmueble en forma permanente.

En el caso acabado de citar y en *Maldonado Pérez* v. *Las Vegas Dev.*, 111 D.P.R. 573 (1981), nos expresamos sobre el alcance del término "ruina" bajo el Art. 1483. Señalamos que ésta tiene que ser consecuencia de aquellas imperfecciones que se pretendieron evitar en alguna de las cuatro

etapas que abarca este concepto. Estas etapas son: *ruina total* (cuando se compromete la solidez o estabilidad del edificio); *ruina parcial* (derrumbe de uno de los elementos principales de la obra); *amenaza o peligro de ruina* (degradación parcial que compromete la existencia de la estructura o de parte esencial de la misma); y *ruina funcional* (defectos que afectan severamente la utilización y disfrute del edificio sin amenazar de ruina elementos vitales del mismo). En cuanto a esta última se han establecido ciertos criterios a utilizarse para determinar si la misma existe, a saber: amenaza a la seguridad pública o a la estabilidad del edificio; que le causen perjuicio considerable al dueño; que tornen la obra en impropia para el uso a que se le destina; o cuando excedan la medida de imperfecciones que cabe esperar en una construcción. Es además un criterio importante que las imperfecciones, por más graves que sean, no constituirán vicios de construcción protegidos por el plazo decenal si afectan elementos del edificio cuya duración se presume sea menor de diez años. Claro, cada situación tiene que resolverse individualmente, pues es necesario el examen cuidadoso de la gravedad de los defectos y las circunstancias en que ocurren.

Los defectos de la obra en este caso caen dentro del concepto de ruina. Existe una ruina funcional, pues los desperfectos del "chalet-terraza" excedieron la medida de imperfección que cabe esperar en este tipo de estructura. Según surge del récord administrativo, los defectos incluyeron, entre otros: las columnas de madera del balcón, agrietadas; estado avanzado de deterioro del techo del balcón; deformación severa de las tablas adheridas a la pared; varias tablas del plafón y el borde de algunos paneles decorativos desprendidos; todas las vigas principales a lo largo y ancho de la terraza, defleccionadas; sistema adecuado para el control de desagüe del techo, inexistente. Es importante, además, hacer notar que la recurrida radicó su querella en DACO apenas haber transcurrido aproxima-

damente un año de haber firmado el contrato de compra-
venta de los materiales y el de instalación con los quere-
llados, respectivamente. Por último, es relevante el hecho de
que, habiendo sido la cantidad de $19,800 el total de gastos
para la construcción, el costo de la corrección de los defectos
se estimó en $13,280.56.

Pasamos ahora a considerar si el prefabricante es un
constructor a los efectos del Art. 1483:

La prefabricación se define de la siguiente manera:

> La prefabricación es un método industrial de construcción
> en el que elementos fabricados en grandes series por los
> métodos de la producción en masa, son montados en las obras
> mediante aparatos y dispositivos elevadores. La construcción
> se efectúa en dos etapas: fabricación de los elementos en la
> fábrica y montaje de las mesuras en la obra. Se llama prefa-
> bricados a esos elementos, o también piezas prefabricadas,
> expresando así que se colocan en obra y se combinan y unen
> en ella cuando ya están moldeados y endurecidos previa-
> mente. El sistema de producción que utiliza tales elementos
> prefabricados es designado con la denominación de construc-
> ción prefabricada, o también construcción por montaje de
> casas, pues es otra de las características del sistema. *Manual
> de la Construcción Prefabricada*, Barcelona, Ed. Blume,
> 1968, pág. 12.

Aquí el peticionario entregó el "chalet-terraza"
debidamente pre-cortado y listo para la construcción, mien-
tras que el otro querellado se limitó a efectuar la insta-
lación.

Ante situación similar nos dice Herrera Catena:

> Ya indicábamos que el "prefabricante" debía ser conside-
> rado como "constructor" en sentido amplio, dado que el pro-
> tagonismo del constructor "strictu sensu" se reducía a *colocar*
> lo "prefabricado", *sin someterlo a ulterior* proceso. Por consi-
> guiente, cuando nos encontramos ante defectos *intrínsecos* de
> lo "prefabricado", habría que responsabilizar al "prefabri-
> cante". Máxime, cuando la "prefabricación" goza de ventajas
> importantes, entre las que figura la especial "facilidad para
> realizar el control de calidad"; pues "el proceso industrial

incita y hace claramente recomendable la tendencia a la comprobación de las calidades previstas", y "la repetición sistemática" del mismo "facilita la adopción de controles" diversos. En definitiva, se trata de una "pre-construcción", trasladada del tajo a la fábrica, que puede llevarse a cabo en mejores condiciones que "a pie de obra", y por la que sería injusto exigirle responsabilidades al contratista —ajeno a ella—, de haber cumplido éste perfectamente su misión de *colocar y acoplar* lo prefabricado. Es difícil verificar precisiones apriorísticas sobre el particular; aunque podemos indicar lo siguiente: que los protagonismos y responsabilidades de contratista y prefabricante dependerán de la medida en que la construcción haya sido "prefabricada"; que el contratista no quedará exonerado cuando incumpliera normas relacionadas con el control posible de lo "prefabricado", y que constituye hipótesis distinta la elaboración de *materiales compuestos* (por el contratista) realizable "a pie de obra". (Escolios omitidos.) (Énfasis en el original.) Herrera Catena, *Responsabilidades en la Construcción*, Granada, Gráficas del Sur, 1977, Vol. II, págs. 200–201. Véase, además, J. Herrera Catena, *op. cit.*, Vol. I, págs. 253–259.

En el caso de autos, como hemos visto, la obra experimentó tantos defectos intrínsecos en los materiales prefabricados como imperfecciones en la construcción. Por tanto, responden ambos, el prefabricante y el instalador.

DACO determinó que el prefabricante y el constructor eran responsables solidariamente por los vicios de la construcción. El tribunal de instancia confirmó ese dictamen.

Hemos resuelto que de no existir convenio entre las partes su responsabilidad es mancomunada, a menos que la ruina se origine por culpa conjunta o que la causa del defecto sea indeterminable o que existe concurrencia de culpas, y éstas están tan íntimamente ligadas que no es posible separarlas. *Carreras* v. *González Santos*, 111 D.P.R. 819 (1981); *Acevedo Hernández* v. *C.R.U.V.*, 110 D.P.R. 655 (1981). Véase, además, *Acevedo Hernández* v. *Viñas Sorbá*, 111 D.P.R. 633 (1981).

Precisamente eso es lo sucedido en el presente caso. La culpa de la ruina es conjunta. Son responsables de ella tanto

el prefabricante como el instalador. Su responsabilidad es solidaria.

Los otros tres apuntamientos son inmeritorios. Se refieren éstos a planteamientos procesales sin mayor trascendencia: (1) en cuanto a la forma y manera del señalamiento de vista en el tribunal de instancia, (2) que el tribunal declaró sin lugar la moción de reconsideración presentada al adoptar los fundamentos de una moción de oposición, la cual fue radicada tardía y (3) que DACO no podía declarar "no ha lugar" a la moción de reconsideración presentada por el peticionario y confirmar su resolución y orden anterior, porque ya la había declarado "con lugar" por resolución del 5 de febrero de 1980.

*Por los fundamentos antes expuestos, se dictará sentencia que confirme la del tribunal de instancia.*

El Juez Asociado Señor Torres Rigual no intervino.

