# 2000 DTA 129

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL VI CAGUAS/HUMACAO/GUAYAMA**

JOSE J. PALACIOS RIVERA
Recurrido

v.

F & R CONSTRUCTION CORP., REINA DE LOS ANGELES, INC.
Recurrentes

Núm. KLRA-2000-00023

San Juan, Puerto Rico, a 31 de marzo de 2000

Panel integrado por su Presidente, el Juez Soler Aquino
y los Jueces Colón Birriel y Martínez Torres

Colón Birriel, Juez Ponente

### TEXTO COMPLETO DE LA RESOLUCION

#### I

La recurrente F&R Construction Corp. (en adelante *"F&R"*), nos solicita la revocación de *una "Resolución"* emitida por el Departamento de Asuntos del Consumidor (en adelante *"DACO"*), el 18 de octubre de 1999, archivada en autos y notificada en igual fecha.

A virtud del dictamen recurrido, el DACO dictaminó que la entonces querellada F&R corregiría ciertos defectos de construcción. El costo aproximado de reparación de las deficiencias encontradas, según concluyó el DACO, ascienden a $500.

El 1 de noviembre de 1999, F&R presentó *"Moción de Reconsideración"*, la que fue acogida por el DACO mediante *"Resolución"* de 9 de noviembre de 1999. Posteriormente, el 17 de diciembre de 1999, el DACO emitió *"Resolución"* en reconsideración declarando *"No Ha Lugar"* la *"Moción de Reconsideración"*, la que es objeto del recurso ante nuestra consideración.

#### II

El 30 de junio de 1994, el querellante-recurrido, José J. Palacios Rivera (en adelante *"Palacios"*), adquirió de F&R, la urbanizadora, mediante escritura de compraventa, una propiedad ubicada en el número G-2 de la Calle 13, en la Urbanización Monte Subacio, Gurabo, Puerto Rico. Cerca de año y cuatro meses después de adquirida la propiedad, a petición de Palacios, F&R llevó a cabo labores de reparación en dicha propiedad.

El 10 de febrero de 1999, Palacios radicó ante el DACO una querella por defectos de construcción. A consecuencia de ésta, un técnico del DACO inspeccionó, el 26 de abril de 1999, la propiedad objeto de los defectos de construcción. Como resultado de la inspección, se estimó el costo de reparación de las deficiencias

encontradas en $500.

El 13 de octubre de 1999, se celebró la vista administrativa correspondiente ante el DACO, concluyendo con la *"Resolución"*, objeto del recurso del 18 de octubre de 1999. A virtud del dictamen recurrido, se le ordenó a F&R corregir los defectos de construcción señalados en la sexta (6) determinación de hechos del referido dictamen, que lee como sigue:

*"6- El día 26 de abril de 1999, un técnico de este Departamento, inspeccionó la propiedad objeto de la querella, en presencia de las partes y constató lo siguiente:*

*A- Hay que corregir los 18 puntos de oxidación en el área que comprende la sala. De estos, tres (3) tienen el empañetado desprendido.*

*B- Hay que corregir trece (13) puntos de oxidación en el comedor, cinco (5) de éstos se habían corregido por la firma y no funcionó, en uno de ellos se desprendió el empañetado.*

*C- Hay que corregir uno (1) en la cocina.*

*D- Hay cuatro (4) puntos con el empañetado desprendido y seis (6) sin desprenderse todavía, en la marquesina, dos (2) de éstos la firma intentó corregir, pero se desprendió el empañetado.*

*E- En el pasillo existen tres (3) puntos de oxidación que habían sido corregidos por la firma, pero volvieron a surgir. También hay un punto del empañetado que amenaza con desprenderse.*

*F- Hay once (11) puntos de oxidación en el techo del dormitorio derecho en donde el empañetado amenaza con desprenderse.*

*G- Hay otros dos (2) puntos en el techo del dormitorio del centro.*

*H- Hay (5) puntos en la losa de hormigón del techo del dormitorio izquierdo. También hay un punto que había sido corregido por la firma y se desprendió el empañetado nuevamente."*

Como señaláramos, el 1 de noviembre de 1999, F&R solicitó reconsideración, la que fue acogida por el DACO el 9 de noviembre de 1999. Finalmente, el 17 de diciembre de 1999, DACO emitió *"Resolución"* en reconsideración declarando *"No Ha Lugar"* a la reconsideración.

Inconforme, F&R recurre ante nosotros solicitando se revoque la resolución emitida, alegando que el DACO incurrió en los siguientes errores:

*"1 Erró el Honorable Departamento de Asuntos del Consumidor al no conformar las determinaciones de hechos con la evidencia ante su consideración.*

*2. Erró el Honorable Departamento de Asuntos del Consumidor al no desestimar la querella por caducidad conforme lo dispuesto en la Ley Núm. 130 del 13 de junio de 1967, según enmendada, y su Reglamento."*

## III

La Ley Núm. 130 del 13 de junio de 1967, 17 L.P.R.A. sec. 501 *et seq.*, tiene como propósito proteger a los compradores de viviendas contra prácticas indeseables en el negocio de la construcción. A virtud de las disposiciones de la Ley Núm. 5, aprobada el 23 de abril de 1973 y de la Ley Núm. 130, *supra*, el Secretario del DACO aprobó el Reglamento Para Regular las Distintas Actividades que se llevan a cabo en el Negocio de la Construcción de Viviendas Privadas en Puerto Rico (en adelante *"Reglamento"*), que entró en vigor el 16 de septiembre de 1977.

Por su parte, y en lo pertinente, la Sección 7 del referido reglamento, establece que todo urbanizador y/o constructor vendrá obligado, al momento de otorgar toda escritura de compraventa de una vivienda, a prestar una fianza o seguro equivalente al dos porciento (2%) del precio de venta de la vivienda. Queda a discreción del Secretario del DACO aumentar la fianza o seguro hasta el máximo de diez porciento (10%) que dispone la ley en aquellos casos que lo creyese conveniente, de acuerdo a los criterios que se establecen en la Sección 7, *supra*. Esta fianza o seguro se mantendrá vigente por el término de dos (2) años siguientes a la fecha del otorgamiento de la escritura de compraventa del comprador original de la vivienda. La fianza garantizará los gastos de reparación y corrección de defectos de construcción al comprador original o compradores subsiguientes, que hayan adquirido dicha vivienda dentro de los dos (2) años siguientes a la fecha de otorgamiento de la escritura de compraventa del comprador original de la vivienda, hasta el monto de la misma, en aquellos casos en que el urbanizador y/o constructor no haya procedido a corregir los defectos de construcción dentro de un período de tiempo razonable, según lo haya así determinado el Secretario del DACO.

La Sección 10 del reglamento, *supra*, enumera una serie de prácticas indeseable en el negocio de la construcción de viviendas. Se enumeran una serie de defectos de construcción y el término en que deberá notificarse al contratista y/o urbanizador de dichos defectos para que los corrija. Conforme dispone su apartado "j", incurre en practica indeseable en el negocio de la construcción de vivienda, todo urbanizador y/o constructor que:

*"J) Deje de corregir cualesquiera de los defectos de construcción que a continuación se enumeran o cualquier otra anormalidad que no se encuentre aquí enumerada, pero que el Secretario determine que es defecto de construcción, tomando como base los principios técnicos de ingenleria, tipo, clase y/o método de construcción, dentro de un período razonable, según lo determine el Secretario."*

Defectos de construcción, a tenor con la Sección 1(f) del reglamento, *supra*, significa cualquier anormalidad, defecto, falta de accesorios, falla, deterioro prematuro, mal funcionamiento, inexactitud en las medidas o cualesquiera otra condición más allá de las tolerancias normales permisibles que pueda sufrir la estructura de vivienda o el área en que ésta esté enclavada o cualesquier otro vicio o condición que exceda la medida de las imperfecciones que cabe esperar en una construcción, sin que se pueda imputar a una fuerza mayor y/o fenómeno natural, y que no se deban a maltrato, alteraciones, falta de mantenimiento, ni desgaste normal, siempre y cuando se notifiquen al urbanizador y/o constructor dentro del período de tiempo que establece la Sección 10(j) del reglamento, *supra*.

Los defectos de construcción señalados por el DACO en su resolución, están comprendidos en la Sección 10(j) del reglamento, *supra*. La reclamación para estos defectos tiene que notificarse al urbanizador y/o constructor dentro del término de dos (2) años, contados a partir del otorgamiento de la primera escritura de compraventa.

Urbanizador y/o constructor, conforme a la Sección 1(f) del reglamento, *supra*, significará *"vendedora"*. Abarca a toda persona que se dedique al negocio de la construcción en calidad de empresario o principal responsable de la promoción, diseño, ventas, construcción de obras de urbanización para viviendas, o de la construcción en gran escala de vivienda, bien del tipo individual o multipisos.

Por otro lado, las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse a tenor de los mismos. Artículo 1044 del Código Civil, 31 L.P.R.A. sec. 2994.

Partiendo de este marco conceptual, pasemos a la consideración de los señalamientos del recurrente.

De los hechos ante nuestra consideración, se desprende que Palacios se quejó ante F&R por vicios de construcción en su propiedad dentro del período establecido por el DACO de dos (2) años a partir de la firma de la escritura de compraventa. Como consecuencia de esta reclamación, F&R realizó reparaciones en dicha

propiedad. Al cabo de cuatro años, los defectos en la construcción reaparecieron, surgieron nuevos desprendimientos del concreto, así como también, se desprendió gran parte de los defectos que habían sido corregidos en la reparación anterior. Es entonces cuando Palacios acude ante el DACO para querellarse contra F&R de los defectos de construcción.

De ordinario, este caso podría ser resuelto asignándole responsabilidad a F&R a virtud del Artículo 1350, de nuestro Código Civil, 31 L.P.R.A. sec. 3801, que señala que: *"El vendedor está obligado a la entrega y saneamiento de la cosa objeto de la venta."* El Artículo 1363 del referido código, 31 L.P.R.A. sec. 3831, expresa que: *"En virtud al saneamiento a que se refiere el Artículo 1350, supra, el vendedor responderá al comprador:*

*"(1) De la posesión legal y pacífica de la cosa vendida,*

*(2) De los vicios o defectos ocultos que tuviere."*

El Artículo 1044, *supra,* señala que: *"Las obligaciones que nacen de los contratos tienen fuerza de Ley entre las partes contratantes, y deben cumplirse a tenor de los mismos."*

Mediante el análisis de estos artículos y su armonización con el reglamento del DACO, podemos concluir que F&R es responsable de sanear o reparar los defectos de construcción que afectan la propiedad de Palacios. Esto se debe a que los defectos surgieron dentro del plazo de dos (2) años para su reclamación establecido en el reglamento de DACO, y los mismos no fueron corregidos de manera eficaz.

El constructor de una obra es responsable de la corrección de los defectos de ésta cuando conviene en repararlos con la parte perjudicada, irrespectivamente de si los defectos son o no arruinantes. *González v. Centex,* 103 D.P.R. 82, (1974); *Pereira v. Ibec,* 95 D.P.R. 28, (1967). F&R se comprometió a reparar los defectos de construcción de manera eficaz y duradera; el hecho de que los mismos reaparecieran con tanta rapidez es indicativo de que tal obligación no se cumplió.

Por otro lado, al examinar las determinaciones de hechos contenidas en los diversos documentos que conforman el expediente de autos, notamos que los defectos en controversia, al parecer, son de carácter recurrente. Como parte de los hallazgos contenidos en el informe de inspección de 26 de abril de 1999, Víctor Matos señaló que el problema existente consiste en que el hormigón utilizado está rechazando algunas partículas. No es problema de varillas oxidadas y que se corrige repicando el área, empañetando con cemento hidráulico y luego aplicando pega de losa. En este informe se menciona que al momento de confeccionarlo, se encontró que once (11) de los desprendimientos que habían sido corregidos en la primera reparación recurrieron, es decir, el área estaba defectuosa nuevamente. En este informe se hace mención de, al menos, sesenticuatro (64) puntos de oxidación, de los cuales algunos presentan desprendimientos de concreto y otros amenazan con desprenderse.

Esta situación, a nuestro entender, además de constituir un serio defecto en la construcción de la propiedad, constituye un riesgo de peligro para los habitantes de la propiedad, ante la posibilidad de desprendimientos de concreto en cualquier momento (muchos de éstos en el techo). Esta condición convierte esta propiedad en una ruinosa.

El Artículo 1483 del Código Civil, 31 L.P.R.A. sec. 4124, establece la responsabilidad del contratista por vicios de construcción al disponer, en lo pertinente, que:

*"El contratista de un edificio que se arruinase por vicios de la construcción, responde de los daños y perjuicios si la ruina tuviere lugar dentro de diez años, contados desde que concluyó la construcción; igual responsabilidad, y por el mismo tiempo, tendrá el arquitecto que la dirigiere, si se debe la ruina a vicios del*

*suelo o de la dirección."*

Para poder exigir responsabilidad al contratista, bajo el Artículo 1483, *supra*, es necesario que la edificación se arruine por vicios de la construcción dentro de los diez (10) años de construida. De una lectura al precitado primer párrafo del Artículo 1483, así como de las interpretaciones jurisprudenciales, no hay duda en cuanto a que el promovente de la acción debe probar, en primer término, el estado ruinoso de la edificación para que proceda su aplicación. Es sabido que la garantía decenal alcanza únicamente a aquellos defectos de particular significación, a aquellos vicios e imperfecciones que causen la ruina del edificio, ya sea la ruina total, la ruina parcial, la amenaza de ruina o la ruina funcional, distintas etapas éstas, jurisprudencialmente reconocidas como ruina. Véase, *Maldonado Pérez v. Las Vegas Development,* 111 D.P.R. 573, 574-75 (1981).

En la situación particular de la ruina funcional no es necesario que se comprometa la solidez o estabilidad del edificio. Resulta imperiosa, sin embargo, la existencia de graves defectos o vicios. Para hacer esta determinación hemos considerado si los defectos o vicios afectan seriamente la utilización y disfrute de la edificación, *Maldonado Pérez, supra,* si exceden de la medida de las imperfecciones que cabe esperar en una construcción. *Fantauzzi v. Pleasant Homes, Inc.,* 113 D.P.R. 132, 135 (1982); *Pereira v. I.B.E.C., supra,* a la pág. 86; *Géigel v. Mariani,* 85 D.P.R. 46, 50 (1962). Si se torna la obra en impropia para su uso, *Fantauzzi v. Pleasant Homes, Inc., supra*; *Maldonado Pérez, supra,* o si causan un perjuicio considerable, *Fantauzzi v. Plasant Homes, Inc., supra.*

Según surge de los hechos en el caso *Rivera v. A & C Development Corp.,* Op. de 26 de noviembre de 1997, **97 J.T.S. 143,** a las págs. 338-353, en la vivienda de la familia Rodríguez, el material del techo comenzó a desprenderse a menos de un año de haber adquirido la vivienda. Los desprendimientos eran susceptibles de ser corregidos a tiempo. De hecho, la constructora accedió a repararlos, mas no lo hizo adecuadamente. Con posterioridad a la reparación, no sólo ocurrieron nuevos desprendimientos, sino que se cayó lo que se había arreglado previamente. Todo ello obligó a la familia de Rivera a abandonar eventualmente la vivienda. Todas fueron determinaciones hechas por DACO, luego de escuchar toda la prueba desfilada en la vista. El Tribunal concluyó que: los desprendimientos del empañetado del techo amenazaban la seguridad de los esposos, sus hijos y nietos, quienes residían en la vivienda, y afectaron, además, la utilización y disfrute de la misma. Ciertamente, de ordinario, no cabe esperar este tipo de defectos en una casa a menos de un año de su entrega, cuando comenzaron a ocurrir los desprendimientos. Contrario a lo argumentado por la constructora, no erraron DACO ni el Tribunal de instancia al concluir que se daba aquí la ruina funcional. Nuestro Tribunal Supremo confirmó dicha determinación por entender que la misma era correcta en derecho.

Una vez concluido que la vivienda en cuestión se encontraba en estado de ruina funcional, es claro que se activa la aplicación del Artículo 1483 y que, por ende, aplica el plazo de garantía de diez años. De aquí que la alegación de que la acción está caduca, por haber transcurrido el período reglamentario de dos años, es inmeritoria. Esta determinación protege a Palacios, quien claramente adquirió una vivienda que adolece de un defecto recurrente, que seguirá afectando la misma por tiempo indefinido. Por ende, quedará obligada F&R a realizar reparaciones que surjan en la propiedad, mientras éstas sean el resultado del rechazo de partículas por parte del hormigón utilizado.

Por último, es necesario señalar que es principio jurisprudencial trillado que las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto, en vista de la vasta experiencia y conocimiento que poseen los mismos. Los tribunales apelativos deben ser cautelosos al intervenir con la apreciación de la prueba que realice dicho organismo cuando sus determinaciones se encuentren fundamentadas por prueba amplia y sustancial. En estos casos, la revisión judicial debe limitarse a determinar si el referido foro actuó de manera arbitraria e ilegal, o en una forma tan irrazonable que su actuación constituya un abuso de discreción. *Metropolitana S.E. y otros v. Asociación de Residentes de la Avenida San Patricio y Areas Circundantes, Inc.,* Op. de lo de abril de 1995, **95 J.T.S. 39,** a la pág. 767; *Roberto E. Fuentes y Otros v. A.R.P.E.,* Op. de 17 de diciembre de 1993, **93 J.T.S. 165,** a las págs. 11385-86;

*Juan Agosto Serrano v. Fondo del Seguro del Estado*, Op. de 17 de diciembre de 1993, **93 J.T.S. 37,** a la pág. 10510; *Asociación de Doctores v. Colegio de Optómetras de Puerto Rico,* Op. de 1 de febrero de 1993, **93 J.T. S. 12,** a la pág. 10349, *Viajes Gallardo v. Homero Clavell,* 131 D.P.R. 275, 289-290.

Del examen realizado al recurso y sus apéndices, resolvemos que el DACO actuó correcta, sabia y razonablemente dentro de sus prerrogativas, que su decisión no fue arbitraria ni caprichosa, por lo que denegamos la expedición del auto solicitado.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General