*946 TEXTO COMPLETO DE LA SENTENCIA
La recurrente Judy Pagán Lisboa recurre de una Resolución dictada el 17 de septiembre de 2008 por el Departamento de Asuntos del Consumidor (DACO) que denegó la querella presentada por la recurrente contra la parte recurrida, Vista Verde, S.E. y la Junta de Directores del Condominio Vista Verde (Querella). Confirmamos.
I
La recurrente es la propietaria del Apartamento C-159 (Apartamento) del Condominio Vista Verde. Lo adquirió el 13 de agosto de 1999. La recurrida Vista Verde, S.E. (Vista Verde) es una sociedad especial organizada y existente bajo las leyes del Estado Libre Asociado de Puerto Rico.
El 21 de mayo de 2004, la recurrente presentó la Querella basándose en el Artículo 1483 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 4124 (Art. 1483). Alegó que, a consecuencia de las fuertes lluvias del mes de mayo de 2004, el Apartamento ha confrontado problemas de emanación de agua por las losas, hongos y humedad constante en paredes y pisos, lo cual le ha ocasionado pérdida en sus bienes y problemas de salud a sus hijos. Además, adujo que la causa de dicha emanación de agua era un defecto en la construcción realizada por Vista Verde. Solicitó que se ordenara a los recurridos corregir dicha situación e indemnizarla por sus daños.
El 9 de septiembre de 2004, el Inspector del DACO, Ingeniero en Entrenamiento, José E. Batista Hernández (Inspector), realizó una inspección en el Apartamento. El 6 de octubre de 2004, el DACO notificó a las partes el Informe Técnico rendido por el Inspector (Informe Técnico). En el mismo, el Inspector señaló, entre otras cosas, que en el patio del Apartamento había un piso en adoquines que podría ser la causa de la humedad en una pared de la habitación principal del Apartamento; y el apartamento colindante está a mayor altura que el Apartamento lo que permite que la pared que divide ambos patios quede en contacto con la tierra siendo ésta la principal causa de filtración en la habitación principal, “closet” del pasillo, baño del pasillo y la habitación #2.
De otra parte, la recurrente contrató al Ingeniero Amador García Aponte (Ing. García), quien rindió un informe pericial el 10 de febrero de 2005. A su vez, Vista Verde contrató al Ingeniero Efraín Echandi Otero (Ing. Echandi), quien rindió su informe pericial el 23 de marzo de 2005.
*947 La vista administrativa se celebró los días 27 de abril y 27 de mayo de 2005 y 8 de junio de 2006. Comparecieron las partes, sus representantes legales, el Ing. García, perito de la recurrente, el Dr. e Ing. Gregorio Hernández (Dr. Hernández), Ing. Echandi y el Ing. Leonidas Almonte (Ing. Almonte), peritos de Vista Verde.
Luego de evaluar la prueba presentada, el 17 de septiembre de 2008, el DACO dictó la Resolución recurrida declarando no ha lugar la Querella. Concluyó que la prueba demostró que las inundaciones y la humedad en él Apartamento ocurrieron desde que la recurrente instaló losas sobrepuestas en el patio del Apartamento y el dueño del apartamento colindante realizó la misma obra en el patio de su apartamento, el cual está a mayor altura que el patio del Apartamento y del cual el agua penetra al patio del Apartamento a través del muro que divide ambos patios. Además, determinó que el sistema de drenaje de ambos apartamentos fue alterado considerablemente por estas obras y una zanja que realizó una compañía de cable televisión para colocar una caja de cemento en el terreno frente al Apartamento. En cuanto a la alegación de la recurrente de que el agua provenía de los techos de los apartamentos y filtraba por la pared que los dividía, determinó que la pared que dividía los apartamentos era medianera, no doble pared, por lo que Vista Verde no tenía que realizar en la pared las obras requeridas en los códigos de construcción para una pared doble.
El 7 de octubre de 2008, la recurrente presentó moción de reconsideración en la cual incluyó, además, una solicitud de determinaciones de hechos adicionales. Mediante resolución fechada y notificada el 9 de octubre de 2008, el DACO denegó la moción de reconsideración.
Inconforme, el 10 de noviembre de 2008, la Recurrente presentó este recurso de revisión. Señala que el DACO cometió los siguientes errores:

“1. Erró el Departamento de Asuntos del Consumidor al apreciar la prueba y declarar No Ha Lugar la querella y ordenar el cierre y archivo del caso.

2. Erró el Departamento de Asuntos del Consumidor al no determinar que un detalle inadecuado de construcción hace que parte del agua que cae sobre el techo del edificio se percole a través de la doble pared que separa el apartamento C-159 del apartamento colindante y llegue hasta el área afectada.

3. Erró el Departamento de Asuntos del Consumidor al determinar que la pared que divide el apartamento C-159 de la recurrente y el apartamento C-158 no es doble pared, sino medianera.

4. Erró el Departamento de Asuntos del Consumidor al no determinar que la pared del apartamento de la recurrente no tiene suficiente capacidad estructural y no cumple con los requisitos de control de agrietamiento.

5. Erró el Departamento de Asuntos del Consumidor al determinar que la instalación de las losas sobrepuestas en el patio de la recurrente son la causa de la inundación de agua hacia el interior del apartamento. ”

Los recurridos presentaron sus alegatos. Resolvemos.
II
La norma establecida es que las decisiones de los organismos administrativos se presumen correctas y gozan de deferencia por los tribunales. Rivera Concepción v. A.R.P.E.., 152 D.P.R. 116, 123 (2000). La facultad revisora de los tribunales de las decisiones administrativas incluye las siguientes áreas: (1) concesión del remedio apropiado; (2) revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial; y (3) revisión de las conclusiones de derecho en su totalidad. T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70, 80-81 (1999).

“Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se 
*948
basan en evidencia sustancial que obra en el expediente administrativo. ” See. 4.5 de la Ley de Procedimiento Administrativo Uniforme (LPAU), según enmendada, 3 L.P.R.A. see. 2175. Sin embargo, “[l]as conclusiones de derecho serán revisadas en todos sus aspectos por el tribunal. ” Id.

El criterio rector en la revisión judicial de una determinación de hechos de una agencia es la existencia de evidencia sustancial en el expediente administrativo. A estos fines, se ha definido evidencia sustancial como “aquella evidencia pertinente que una mente razonable pueda aceptar como adecuada para sostener una conclusión”. Ramírez v. Depto. de Salud, 147 D.P.R. 901, 905 (1999). De ordinario, los tribunales no intervendrán en las determinaciones de hechos de las agencias, mientras exista evidencia sustancial en apoyo de las mismas. Pacheco v. Estancias, 160 D.P.R. 409, 432 (2003). Dicho análisis requiere que la evidencia sea considerada en su totalidad; esto es, tanto la que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido. Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 425, 437 (1997).
Para sostener la posición de que no existe evidencia sustancial que apoye las determinaciones de la agencia administrativa, la parte afectada debe demostrar que existe “otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la totalidad de la prueba presentada... y hasta el punto que se demuestre claramente que la decisión [de la agencia] ... no está justificada por una evaluación justa del peso de la prueba.” Hilton Hotels v. Junta Salario Mínimo, 74 D.P.R. 670, 686 (1953). La prueba ofrecida deberá desfavorecer la presunción de que la determinación del organismo administrativo se desprende de la totalidad de la prueba que éste tuvo ante su consideración. Véase, Ramírez v. Depto. de Salud, 147 D.P.R., a las págs. 905-906.
Además, es norma reiterada que el Tribunal de Apelaciones tiene amplia discreción en la apreciación de la prueba pericial y documental desfilada, ya que está en las mismas condiciones que los tribunales de instancia. Dye Tex PR., Inc. v. Royal Ins. Co., P.R., 150 D.P.R. 658, 662-663 (2000). Por esta razón, podemos adoptar nuestro propio criterio en cuanto al valor probatorio de este tipo de prueba, pudiendo incluso descartarla aunque resulte técnicamente correcta. Culebra Enterprises v. E.L.A., 143 D.P.R. 935, 952 (1997).
Sin embargo, cuando el juzgador de los hechos escucha el testimonio de varios peritos en torno a una misma cuestión y dirime la credibilidad de los testimonios periciales en conflicto, dicha credibilidad juega un papel importante en la adjudicación de la controversia de que se trate, pues, dependiendo de cuál testimonio pericial se acoja, variará la conclusión sobre responsabilidad del demandado. Hernández v. San Lorenzo Const., 153 D.P.R. 405, 425 (2001). Se ha dicho al respecto que “[e]n tal caso, el tribunal apelativo debe mostrarse más cauteloso que de ordinario y, hasta donde no conflija con otra prueba de mayor contundencia, debe exhibir la misma deferencia que cuando el foro de primera instancia adjudica credibilidad de cualquier otro testigo que no sea perito”. H. Sánchez Martínez, Práctica Jurídica de Puerto Rico; Derecho Procesal Apelativo, Lexis-Nexis of Puerto Rico, Inc., Ed. 2001, págs. 619-620.
De otra parte, el Art. 1483 establece la responsabilidad de los profesionales de la construcción por los vicios o defectos de que adolezca la obra supervisada o construida por ellos. Pacheco v. Estancias de Yauco, 160 D.P.R., a la pág. 419. Así, el Art. 1483 dispone, en cuanto a los arquitectos y contratistas, lo siguiente:

“El contratista de un edificio que se arruinase por vicios de la construcción, responde de los daños y perjuicios si la ruina tuviere lugar dentro de diez (10) años, contados desde que concluyó la construcción; igual responsabilidad, y por el mismo tiempo, tendrá el arquitecto que la dirige, si se debe la ruina a vicios del suelo o de la dirección.

Si la causa fuere la falta del contratista a las condiciones del contrato, la acción del ¡sic] indemnización durará quince (15) años. ”

*949 El concepto de ruina, elemento esencial de la acción decenal por vicios de construcción del Art. 1483, ha evolucionado de manera que actualmente la ruina no necesariamente tiene que afectar la subsistencia de la construcción en su solidez o estabilidad. Es decir, la protección de la garantía decenal se ha extendido desde la ruina total hasta aquellos defectos graves que, “sin llegar a amenazar de ruina elementos vitales del edificio, afectan seriamente su utilización y disfrute, ocasionan[do] su ruina funcional”. Maldonado Pérez v. Las Vegas Dev., 111 D.P.R. 573, 574-575 (1981). Véase, además, Federal Ins. Co. v. Dresser Ind., Inc., 111 D.P.R. 96, 103-105 (1981).
Para determinar qué defectos de construcción pueden ser catalogados como ruina funcional, se han adoptado los siguientes cuatro criterios: (1) los defectos causen perjuicio considerable al propietario; (2) comprometan la seguridad pública; (3) tornen la obra en impropia para el uso a que se le iba a destinar; o (4) excedan la medida de las imperfecciones que cabe esperar en una constmcción. Fantauzzi v. Pleasant Homes, Inc., 113 D.P.R. 132, 135 (1982).
A pesar de que, como hemos indicado, el concepto mina ha evolucionado, la jurisprudencia ha establecido firmemente que bajo ninguna de las etapas de mina, sea ésta total, parcial o funcional, se presume que abarca todo tipo de vicio de constmcción. Maldonado Pérez v. Las Vegas Dev., 111 D.P.R., a la pág. 575. Consciente de la dificultad que entraña la interpretación y aplicación del concepto de que existe un vicio de constmcción si el defecto excede la medida de las imperfecciones que cabe esperar en una constmcción, nuestro Tribunal Supremo ha llamado la atención de los juzgadores al hecho de que éste debe ser manejado con especial cuidado y cautela, pues “si se aplica aislada y literalmente, el Artículo 1483 abarcará de por fuerza casi todo género de defectos. ” Id.
Para evitar la ampliación impermisible del término mina y “en reconocimiento de que es excesivo permitir ciertas reclamaciones demasiado tiempo después de la recepción de la obra”, DACO aprobó, al amparo de su Ley Habilitadora, Ley Núm. 5 de 23 de abril de 1973, según enmendada (Ley 5), 3 L.P.R.A. see. 341 y ss., y la Ley de la Oficina del Oficial de Constmcción adscrita a la Administración de Renovación Urbana y Vivienda, Ley Núm. 130 de 13 de junio de 1967, según enmendada (Ley 130), 17 L.P.R.A. see. 501 y ss., el Reglamento para Regular las Distintas Actividades que se llevan a cabo en el Negocio de la Constmcción de Viviendas Privadas en Puerto Rico, Reglamento Núm. 2268 de 17 de agosto de 1977 (Reglamento). Id., a la pág. 578. La Sección 10 (j) del Reglamento contiene ciertas clasificaciones de defectos de constmcción que, al haber sido establecidas a base de los principios técnicos de ingeniería, tipo, clase y método de constmcción, facilitan la tarea de determinar la existencia de un defecto que implique ruina. Interstate Gen. Corp. v. Soto, 113 D.P.R. 298, 300 (1982).
No obstante, para que proceda una acción bajo la Ley 130 y el Reglamento, los defectos deberán de sobrevenir y ser notificados al contratista dentro de un término de dos años. A estos fines, el Artículo 11 de la Ley 130, 17 L.P.R.A. see. 511, dispone, en lo pertinente, que:

“Las acciones para exigir responsabilidades por vicios o defectos de construcción excepto aquéllas que cualifiquen bajo el Artículo 1483 del Código Civil, caducan por el transcurso de dos años a partir del otorgamiento de las escrituras de compraventa. ”

Expirado el referido plazo de caducidad, el dueño de la edificación sólo puede prevalecer en su acción decenal por mina de construcción aportando pmeba demostrativa de que el defecto es de tal gravedad que su aparición para el tiempo en que se revela el defecto excede la medida de lo permisible técnicamente, que éste se debe a un vicio de constmcción o diseño y que surgió dentro de los primeros diez años, contados a partir de la constmcción de la obra. “La determinación administrativa sobre estos extremos debe fundarse en prueba sustancial. ” Interstate Gen. Corp. v. Soto, 113 D.P.R., a la pág. 300. Véase, además, Art. 17 (e) de la Ley 5, 3 L. P.R.A. sec. 341p. (e); Muñoz v. Ten General, 167 D.P.R. _ (2006), 2006 J.T.S. 42, a las págs. 1021-1022. En *950 esta situación, las clasificaciones antes indicadas que están contenidas en el Reglamento, sirven de guía para dirigir la discreción del juzgador al apreciar los hechos ante su consideración y determinar la gravedad del defecto en controversia. Véase, Maldonado Pérez v. Las Vegas Dev. Corp., 111 D.P.R., a la pág. 579.
III
En el presente caso, la recurrente sostiene en sus señalamientos de error que el DACO incidió en su apreciación de la prueba pericial al no determinar que los problemas de filtraciones y humedad del Apartamento eran causados por defectos de construcción de Vista Verde y, esencialmente, se apoya en el informe de su perito. Sin embargo, no solicitó ni presentó una transcripción o una exposición narrativa de la prueba. Correspondía a la parte recurrente solicitar la reproducción de la prueba oral al presentar su escrito de revisión judicial, lo que no hizo. Regla 66 (A) del Reglamento de este Tribunal, 4 L.P.R.A. Ap. XXII-B, R. 66 (A) (Supl. 2008). Por tanto, nos tenemos que limitar a las determinaciones de hechos probados que hizo la agencia.
Al evaluar el expediente ante nos, se desprende que las determinaciones de hechos incluidas por el DACO en la Resolución recurrida están sustentadas por la prueba obrante en el expediente. Veamos.
En primer lugar, del Informe Técnico surgió que en el patio del Apartamento había un piso en adoquines que podría causar la humedad en una pared de la habitación principal del Apartamento; y el apartamento colindante está a mayor altura que el Apartamento lo que permite que la pared que divide ambos patios quede en contacto con la tierra siendo ésta la principal causa de filtración en la habitación principal, “closet” del pasillo, baño del pasillo y la habitación #2.
Además, de la Resolución recurrida surge que los problemas del Apartamento comenzaron desde que la recurrente realizó una instalación de lozas en su patio y contribuyó a dichos problemas una obra realizada por el vecino colindante de la recurrente similar a la efectuada por ésta en su patio. Así también, el DACO determinó que la compañía de cable televisión realizó obras en el área frontal al Apartamento que afectan el flujo de escorrentía en el área, provocando un estancamiento de agua. Todas estas determinaciones de hechos, las cuales fueron fundamentadas sustancialmente por la prueba desfilada ante dicha agencia durante la vista evidenciaría, llevaron al DACO a concluir que tales obras alteraron considerablemente el sistema de drenaje del patio del Apartamento, lo cual tuvo como resultado que las condiciones existentes en la propiedad de la recurrente no fueron provocadas por Vista Verde.
En cuanto al informe pericial del perito de la recurrente, el DACO lo descartó por considerar que le merece entera credibilidad los planteamientos del Dr. Hernández, uno de los peritos de Vista Verde. Según la Resolución recurrida, éste durante la vista declaró que:

“a) cuando hay doble pared entre los edificios, existe una separación entre éstos para que “respiren". En el caso del complejo residencial de la querellante, esta separación existe entre oros apartamentos, pero no entre el C-159 y C-158;

b) la separación o apertura que existe en el techo entre los edificios no está rellenada con calafateo o “caulking ” (esto se hace cuando hay separación entre dos paredes para que éstas “respiren En el caso de la Querellante, entre los edificios donde hay doble pared, se le colocó cemento encima y se agrietó la junta;

c) no se construyó puntal;

d) el área de la pared lateral expuesta en el techo entre los dos edificios mide IV2”, no 4” como indica el perito de la Querellante;

e) el Factor Z (se toma en cuenta para que el agrietamiento del hormigón se produzca bajo ciertos factores) no *951 tiene validez en el caso del apartamento de la Querellante porque el mismo se utilizaba para construcciones anteriores al 1999. Desde el año 1999 en adelante se utilizaba el Factor S (varillas), pero aun asumiendo que aplica el factor S, éste se utiliza para regular el esfuerzo en flexión para el caso de vigas y losas que cargan en una sola dirección. En el caso de la Querellante, la pared medianera es un muro, y el muro, por su naturaleza, tiene carga gravitaría y tiene menos grietas porque tiene carga axial. ”
Finalmente, el Dr. Hernández concluyó que la pared que divide el Apartamento y el apartamento que colinda con el de la recurrente no es de doble pared, sino medianera.
De conformidad con lo anterior, la agencia evaluó la evidencia que desfiló en la vista administrativa. En su decisión expuso los hechos que dieron base para su decisión, lo cual refleja que ésta evaluó y analizó la prueba ante su consideración. Se encontró ante prueba conflictiva y otorgó credibilidad a las declaraciones del Dr. Hernández. Por tanto, entendemos que las determinaciones de hechos de la agencia recurrida están sostenidas por evidencia sustancial, por lo que no intervenimos con las mismas. Pacheco v. Estancias de Yauco, 160 D.P.R., a la pág. 432; Fac. C. Soc. Aplicadas, Inc. v. C.E.S., 133 D.P.R. 521, 532-533 (1993).
En estas circunstancias, la recurrente falló en establecer que los vicios o defectos en el Apartamento fueron causados por vicios en la construcción realizada por Vista Verde al no demostrar la existencia de otra prueba en el récord administrativo, que de alguna forma menoscabe el peso de la evidencia sustancial en la cual se basó el DACO para formular sus determinaciones de hechos. Menos aún ha podido establecer que la agencia no realizó una evaluación justa del peso de la prueba que tuvo ante su consideración. Hilton Hotels v. Junta Salario Mínimo, 74 D.P.R., a la pág. 686. La recurrente se limitó a impugnar las determinaciones de hechos, sin producir evidencia alguna para derrotarlas. Sobre ésta recaía el peso de probar que las determinaciones de hechos del DACO son arbitrarias, irrazonables o que se tomaron en ausencia de evidencia sustancial. Asimismo, falló en rebatir la presunción de corrección y la deferencia que cobija a toda decisión administrativa.
Por tal razón, concluimos que existe evidencia sustancial en el récord administrativo que sostiene la determinación de que los problemas del Apartamento no son causados por defectos de construcción. Esta se funda en una interpretación razonable de la prueba. En vista de ello, no se cometieron los errores señalados por la recurrente en su escrito de revisión.
IV
Por los fundamentos expuestos, se dicta sentencia confirmando la Resolución recurrida.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Leda. María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones