Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| Carlos E. Aguilar Pérez, Gladys Pérez Craft y la Sociedad Legal de Gananciales por ellos compuesta, María Teresa Aguilar Pérez<br><br>APELANTES<br><br>v.<br><br>Universal Insurance Company, Fulano de Tal, Sutano de Tal y Aseguradoras A, B, y C, Garita Development, INC. Louis Tosi y la Sucesión de Julia Haydee Tosi compuesta por Louis E. Tosi y Jeanne D. Tosi, Luz Martin, t/c/c Luz Crespo de Martin, Mabel Martin Crespo, Irma Martin Crespo, Raúl Alberto Martin Crespo, Royal Insurance Company, National Insurance Company, Ingeniero Fulano de Tal, Arquitecto Mengano Contratista Mengano Subcontratista Sutano Demandados<br><br>APELADA | KLAN202500016 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm. FAC2024-5833 y KAC1990-1526<br><br>Sobre: Daños por incumplimiento de contrato. |

Panel integrado por su presidenta, la Jueza Martínez Cordero, el Juez Cruz Hiraldo y la Jueza Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de enero de 2026.

Comparece ante nos Carlos E. Aguilar, Pérez, Gladys Pérez Kraft y la SLG por ellos compuestas y María Teresa Aguilar Pérez (Apelantes) mediante un Recurso de *Apelación* instado el 7 de enero de 2025. En su recurso, nos solicitan que revoquemos la Sentencia

NUM. IDENTIFICADOR:

SEN2026_____

emitida por el Tribunal de Primera Instancia el 4 de diciembre de 2024, mediante el cual se declaró "No Ha Lugar" la Demanda en su totalidad, ordenando el archivo definitivo del caso contra todos los codemandados.

Por los fundamentos que expondremos a continuación se confirma la Sentencia del Tribunal de Primera Instancia (TPI) emitida el 4 de diciembre de 2024. Exponemos el trasfondo factico y procesal que acompaña la presente controversia.

I.

El 18 de septiembre de 1990, los Apelantes presentaron una Demanda sobre Daños y Perjuicios e Incumplimiento de Contrato en contra de los Apelados.[1] En su escrito expusieron que son dueños del inmueble J – 3 localizado en la Urbanización Colinas de Cupey.[2] Arguyeron que la casa sufrió daños debido al paso del Huracán Hugo el 18 de septiembre de 1989. Además, hubo dos (2) terremotos leves ocurrido para esas fechas.[3] Los daños reclamados ascienden a la cantidad de $259,000.00.

El 25 de marzo de 1991, se presentó Demanda Enmendada con el propósito de añadir como demandados a Garita Development Corp (GARITA), Constructora Tolec, Inc (TOLEC), Louis S. Tosi y su esposa, en representación de la SLG (TOSI) e Ingeniero Fulano, Arquitecto Mengano y Contratista Mengano.[4] Asimismo, presentaron una nueva causa de acción en daños bajo el término decenal en contra los contratistas, arquitectos, entre otros. [5] Dado que hubo "pobre diseño, construcción, al uso de materiales de inferior calidad en su construcción, y/o la preparación inadecuada del subsuelo donde ubica (. . .) ".[6]

---

[1] Véase Apéndice del Recurso de Apelación en la pág. 1.
[2] *Íd.*, pág. 2.
[3] *Íd.*
[4] *Íd.*, pág. 6.
[5] *Íd.*, pág. 11.
[6] *Íd.*

El 29 de agosto de 1991, se diligenciaron los emplazamientos a TOSI,[7] GARITA,[8] TOLEC,[9] y Universal Insurance Inc.[10]

El 21 de octubre de 1991, GARITA, TOLEC, TOSI presentaron su Contestación a Demanda, en resumen, negaron todas las alegaciones.[11]

El 6 de noviembre de 1991, los Apelantes presentaron Segunda Demanda Enmendada con el propósito de añadir los nombres legales de las partes.[12]

El 17 de diciembre de 1991, Universal Insurance Inc (UNIVERSAL), presentó su Contestación a Demanda Enmendada.[13] En la cual negó la mayoría de las alegaciones.

Luego, el 1 de marzo de 1993, GARITA, TOLEC y TOSI presentaron Contestación a Segunda Demanda Enmendada.[14] Asimismo, el 5 de marzo de 1993, Universal también presentó su Contestación a Segunda Demanda Enmendada en la cual incorporó por referencia las mismas alegaciones de su Contestación a Demanda Enmendada.[15]

El 12 de noviembre de 1993, se llevó a cabo una Inspección Ocular en el inmueble de los Apelantes en donde se observaron varias grietas. [16]

El 23 de enero de 1994, los Apelantes realizaron una Tercera Demanda Enmendada para incluir a Royal Insurance Company.[17] A su vez, el 8 de marzo de 1994, Universal presentó su Contestación a Tercera Demanda Enmendada.[18] En su escrito estableció que ¨la parte demandante fue compensada por la compareciente Universal

---

[7] *Íd.*, pág. 20.
[8] *Íd.*, pág. 22.
[9] *Íd.*, pág. 24.
[10] *Íd.*, pág. 26.
[11] *Íd.*, pág. 29.
[12] *Íd.*, pág. 31.
[13] *Íd.*, pág. 40.
[14] *Íd.*, pág. 56.
[15] *Íd.*, pág. 58.
[16] *Íd.*, pág. 78.
[17] *Íd.*, pág. 82.
[18] *Íd.*, pág. 91.

Insurance Company en su reclamación cubierta por la póliza antes referida y en aquellos riesgos cubiertos por la misma.[19]

El 25 de julio de 1994, se presentó la Cuarta Demanda Enmendada.[20] Las enmiendas fueron relativo a la inclusión como partes demandadas a los señores Raúl Martin y su esposa Luz Martin y a la Sociedad de Bienes Gananciales compuesta por ambos. El Sr. Martin es el ingeniero estructural que llevó a cabo el diseño estructural de la edificación.[21]

El 14 de noviembre de 1994, Royal Insurance Company of Puerto Rico (ROYAL) presentó su Contestación a la Cuarta Demanda Enmendada. [22] En resumen, negó la mayoría de las alegaciones. Asimismo, trajo como defensa afirmativa que los daños reclamados no están cubiertos por la póliza expedida por Royal Insurance Company. Asimismo, el 27 de febrero de 1995, los Sres. Martin – Martin, también presentaron su Contestación a Cuarta Demanda Enmendada y Reconvención.[23]

El 5 de mayo de 1995, GARITA, TOLEC y TOSI presentaron una Demanda contra Co – Parte en contra de ROYAL debido a que este le ¨negó defensa a los aquí demandados y demandantes en contra co - parte en base a que la demanda era por defectos de construcción¨.[24] El 14 de septiembre de 1995, ROYAL presentó su Contestación a Demanda contra Co-Parte en la cual expuso que ¨la compareciente negó cubierta a base de los términos y condiciones de la póliza y tomando en cuenta las alegaciones de la demanda¨.[25]

El 18 de diciembre de 1995, los Apelantes presentaron una Quinta Demanda Enmendada con el propósito de incluir a National

---

[19] *Íd.*, pág. 92.
[20] *Íd.*, pág. 96.
[21] *Íd.*, pág. 98.
[22] *Íd.*, pág. 108.
[23] *Íd.*, pág. 120.
[24] *Íd.*, pág. 141.
[25] *Íd.*, pág. 145.

Insurance Company.[26] Asimismo, se enmendó la partida de daños reclamados ascendentes a $459,000.00, debido a daños adicionales que alegadamente han ocurrido.[27] El 22 de enero de 1996, los Sres. Martin - Martin presentaron su Contestación a Quinta Demanda Enmendada en la cual reprodujeron las mismas contestaciones vertidas en su Contestación a Cuarta Demanda Enmendada.[28] A su vez, el 13 de febrero de 1996, Universal presentó su Contestación a Quinta Demanda Enmendada. [29]

Nuevamente, el 12 de febrero de 1996, los Apelantes presentaron una Sexta Demanda Enmendada en la que agregaron como demandada a Eagle Star Insurance Company (EAGLE).[30] El 16 de marzo de 1996, Universal presentó su Contestación a Sexta Demanda Enmendada.[31] Por otro lado, el 26 de marzo de 1996, ROYAL presentó su Contestación a Sexta Demanda Enmendada.[32] El 24 de abril de 1996, los Sres. Martin – Martin presentaron su Contestación a Sexta Demanda Enmendada.[33] El 16 de julio de 1996, compareció National para presentar su Contestación a Demanda, en la cual en resumen negó las alegaciones.[34]

El 2 de febrero de 1998, GARITA, TOLEC, TOUSI presentaron una Oferta de Sentencia ¨por la suma de $135,000.00 bajo las siguientes condiciones: a. La parte demandante tendrá que otorgar escritura cediendo la propiedad a la parte demandada. b. La parte demandante entregará la propiedad libre de gravámenes¨. [35]

El 19 de septiembre de 1997, el TPI emitió una Sentencia Parcial en la cual dispuso que ¨ se ordena a [ROYAL] proveer defensa

---

[26] *Íd.*, pág. 153.
[27] *Íd.*, pág. 163.
[28] *Íd.*, pág. 165.
[29] *Íd.*, pág. 169.
[30] *Íd.*, pág. 175.
[31] *Íd.*, pág. 186.
[32] *Íd.*, pág. 191.
[33] *Íd.*, pág. 195.
[34] *Íd.*, pág. 197.
[35] *Íd.*, pág. 224.

a [GARITA], [TOLEC] y [TOSI] en la presente demanda. Asimismo, deberá reembolsarle y/o pagarle todas las cantidades pagadas y/o adeudades hasta el presente por concepto de honorarios de abogados en la litigación de este caso desde sus inicios".[36] Dicha Sentencia Parcial fue apelada hasta el Tribunal Supremo de Puerto Rico siendo confirmada por nuestro máximo foro el 30 de marzo de 2001.[37]

El 25 de agosto de 2006, los Apelantes presentaron una Moción Aceptando Oferta de Transacción.[38] En su escrito, réplican a una Moción sobre gestiones transaccionales y solicitud para que se celebre vista transaccional.[39] En su escrito expone que esta oferta:

> [C]onstituye la primera ocasión en que TOSI ha manifestado su disposición transigir la reclamación en su contra mediante la resolución del contrato de compraventa y devolver el precio de la compraventa mas los intereses pagaderos. De haberlo hecho antes, la parte demandante lo hubiese aceptado de inmediato, como en efecto, por entender que la misma es seria y comprometedora, por la presente **acepta dicha oferta**.[40]

Posteriormente, el 25 de mayo de 2007, se presentó una Séptima Demanda Enmendada.[41] En su alegato añadieron como parte Demandante a María Teresa Aguilar Pérez, hija de los Apelantes. Se realizó la sustitución de Julia Haydee Tosi por su Sucesión debido a que la Sra. Tosi falleció. Además, expusieron que TOSSI y Martin incumplieron su obligación y responden bajo el Art. 1077 del Código Civil por los daños sufridos por su negligencia no solo por la doctrina de responsabilidad del contratista o arquitecto si no por incumplimiento de contrato al construir y venderle a los demandantes un producto que no cumplía con el Código de

---

[36] *Íd.*, pág. 211.
[37] *Íd.*, pág. 229.
[38] *Íd.*, pág. 254.
[39] La Moción no forma parte del apéndice.
[40] *Íd.*, pág. 255.
[41] *Íd.*, pág. 280.

Construcción, ni con los planos. Además, se reclamó por el incumplimiento de acuerdo de transacción debido a que, según los Apelantes, TOSI acordó adquirir el inmueble con el mercado conforme a la tasación. Por último, la cantidad reclamada ascendió a $773,000.00.

El 12 de julio de 2007, los Sres. Martin – Martin presentaron su Contestación a Séptima Demanda Enmendada en la cual niegan las alegaciones nuevamente. [42] A su vez, el 25 de septiembre de 2007, GARITA, TOLEC y TOSI, presentaron su Contestación a Séptima Demanda Enmendada.[43] En resumidas cuentas, también negaron las mayorías de las alegaciones. El 18 de octubre de 2007, NATIONAL presentó Contestación a Séptima Demanda Enmendada, en la cual al igual que los otros codemandados negó la mayoría de las alegaciones.[44] Tanto GARITA, TOLEC, TOSI,[45] y NATIONAL expusieron en sus respectivas réplicas que los Apelantes añadieron nuevas alegaciones en contravención a la Orden emitida por el TPI el 10 de mayo de 2007. [46] Por último, el 20 de noviembre de 2007, ROYAL ahora conocida como Real Legacy Assurance Company, Inc (REAL LEGACY) presentó su Contestación a Séptima Demanda Enmendada en la que rechazo la mayoría de las alegaciones.[47]

El 12 de noviembre de 2013, Luz Crespo Vda. de Martin y la Sucn. De Raúl Martín compuesta por Luz Crespo de Martin, Mabel Martin Crespo, Irmy Martin Crespo, Raúl Martin Crespo y Ayleen Yadira Martin Ramírez presentaron la Contestación a Séptima Demanda Enmendada debido a que fueron sustituido por el Ing.

---

[42] *Íd.*, pág. 298.
[43] *Íd.*, pág. 300.
[44] *Íd.*, pág. 305.
[45] *Íd.*, pág. 306.
[46] *Íd.*, pág. 308.
[47] *Íd.*, pág. 312.

Raúl Martin.[48] En dicho escrito los comparecientes negaron las alegaciones por falta de información. [49]

El juicio en su fondo se celebró los días 13,14,16,20,21 y 23 de septiembre de 2010, y el 12, 15, 18 y 22 de septiembre de 2013.

El 26 de noviembre de 2018, el TPI emitió una Sentencia en la cual dispuso que ¨[a]un cuando la evidencia pericial fue abundante en la presentación de este caso, no surge de dicha evidencia pericial que la propiedad de los demandantes adolezca de ruina alguna, tomando en consideración las cuatro modalidades de dicho concepto¨.[50] En lo que respecta al contrato de transacción el TPI señaló que:

> [N]o se han presentado en forma clara lo que hubieran sido las consideraciones o causas del contrato de transacción en aquel momento. Por eso tal vez la propia parte demandante se ve forzada a estimar lo que hubiera recibido como parte del contrato. Segundo, no estamos en posición de sancionar un contrato de transacción cuando el Juez que tuvo el caso a su cargo en el momento en que supuestamente se perfecciono, rehusó reconocerlo y dictar la sentencia de transacción solicitada.[51]

El 13 de diciembre de 2018, el Apelante presentó un escrito titulado Solicitud Urgente Para que el Honorable Tribunal Enmiende y/o haga determinaciones de hechos adicionales, conclusiones de derechos adicionales y enmiende y reconsidere su sentencia dictada el 26 de noviembre de 2018.[52]

La parte Apelante recurrió a este Tribunal de Apelaciones, en donde un panel hermano emitió una Sentencia el 25 de junio de 2021 desestimando el recurso por falta de jurisdicción por considerar que se presentó de manera prematura. Allí, determinó que la sentencia emitida no constituía una adjudicación de la

---

[48] *Íd.*, pág. 472.
[49] *Íd.*
[50] *Íd.*, pág. 504.
[51] *Íd.*
[52] *Íd.*, pág. 506.

totalidad del caso, ya que no se había resuelto la reclamación contra las compañías aseguradoras.

El 4 de noviembre de 2022, la Asociación de Garantía de Seguros Misceláneos de Puerto Rico presentó una Moción Solicitando Desestimación a favor de la Asociación de Garantía de Seguros Misceláneos de Puerto Rico. En su escrito adujo que se extendiera a ellos la Sentencia del Tribunal de Primera Instancia desestimando la causa de acción el 26 de noviembre de 2018.[53]

El 15 de diciembre de 2022, los Apelantes presentaron una Oposición de Parte Demandante Aguilar a Solicitud de Desestimación de la Asociación de Garantía de Seguros Misceláneos de Puerto Rico y otros extremos.[54]

Posteriormente, el 5 de diciembre de 2024, el TPI emitió su Sentencia en la cual dispuso que llegó a la misma conclusión que el Juez de la Sala de San Juan en lo que respecta a las determinaciones de hechos y de derecho. Por lo cual, declaró ¨No Ha Lugar¨ la demanda en cuanto a las codemandadas, Garita Development, Constructora Tolec, la Sucn. S. Tosi, la Sucn. de su esposa Julia Haydee Tosi, la Sucn. de Raúl Martin y su esposa Luz Martin y National Insurance. En lo que respecta a Real Legacy Assurance expuso que:

> [E]s menester señalar que mediante Sentencia Parcial emitida el 9 de junio de 1995, el Tribunal de Primera Instancia, Sala de San Juan ya había desestimado la demanda en cuanto a la codemandada Royal Insurance, sucedida por Real Legacy Assurance. Solo se mantuvo en el pleito en virtud de la Demanda contra Coparte presentada en su contra, eso es a los únicos efectos de proveerle representación legal a las partes codemandadas, Garita Development, Constructora Tolec y matrimonio Tosi. Por lo tanto, habiendo determinado que procede desestimar la demanda en contra de las partes codemandadas, Garita Development, Constructora Tolec y el matrimonio Tosi, es evidente que también procede desestimar la demanda en contra de Real Legacy Assurance porque

---

[53] *Íd.*, pág. 629.
[54] *Íd.*, pág. 628.

ya no tiene obligación de proveerle defensa a dichas codemandas.

Inconforme con la determinación, el 7 de enero de 2025, los Apelantes presentaron su Recurso de Apelación en el cual realizaron los siguientes señalamientos de errores:

Erró el Honorable TPI al desestimar la reclamación bajo el Artículo 1483 del Código Civil de Puerto Rico por los daños y perjuicios sufridos por las partes demandantes por ruina funcional debido a los vicios y defectos que claramente tiene el inmueble en su diseño y construcción y causan su ruina funcional por exceder la medida que cabe esperar en una construcción de esa calidad y precio. (Negrillas omitidas).

Erró el Honorable TPI al desestimar la reclamación bajo el Artículo 1077 del Código Civil de Puerto Rico por incumplimiento de contrato [de] compraventa al no haberse construido el inmueble conforme los planos y especificaciones según se le represento a la parte demandante Aguilar al momento de comprarla. (Negrillas omitidas).

Erro el Honorable TPI al desestimar la reclamación bajo el Artículo 1077 del Código Civil de Puerto Rico por incumplimiento del contrato de transacción judicial al negarse TOSI y la sucesión de Julia Hayde Tosi, Garita y TOLEC a comprarle el inmueble a la parte demandante durante el trámite de este pleito conforme acordado al precio tasado en el mercado como si el inmueble no tuviera defecto o visión alguno y las subsiguientes ofertas de compra efectuadas por dichas parte demandas a vivía voz en sala y por escrito, que fueron todas aceptadas por la parte demandante Aguilar, por escrito y no honradas por las parte demandadas. (Negrillas omitidas).

Erró el Honorable TPI al desestimar la Reclamación por incumplimiento de contrato bajo la doctrina de Declaración Unilateral de Voluntad al no haberse construido el inmueble conforme los planos y especificaciones conforme estaría se le represento a la parte demandante al momento de comprarla. (Negrillas omitidas).

Erró el Honorable TPI al desestimar la Reclamación de la demandante María Teresa Aguilar Pérez, la hija menor (hoy mayor de edad), de los demandantes por los danos y perjuicios que ella sufrió por como le afecto a ella la condición ruinosa y vicios de construcción del inmueble.

Erró el Honorable TPI al no anotarle la rebeldía, permitirles presentar prueba en su defensa y no dictar Sentencia en Rebeldía en contra de las partes codemandas, TOSI, GARITA y TOLEC, y los miembros de la Sucesión de la codemandada Julia Haydee TOSI, Royal, posteriormente, Real Legacy Assurance

Company, y National, representadas hoy por la AGSM pese a que ninguna de dichas partes presentó contestación a la séptima demanda enmendada presentada por la parte demandante el 25 de mayo de 2007. (Negrillas omitidas).

II.
**A. Responsabilidad por Ruinas y Defectos de Construcción.**

El Art. 1483 del Código Civil de 1930, 31 LRPA sec. 4124, regula lo relacionado a la responsabilidad por ruinas y vicios de construcción, este artículo establece que:

El contratista de un edificio que se arruinase por vicios de construcción responde de los daños y perjuicios si la ruina tuviera lugar dentro de diez (10) años, contados desde que concluyo la construcción; igual responsabilidad, y por el mismo tiempo, tendrá el arquitecto que la dirigiere, si se debe la ruina a vicios del suelo o de la dirección

Si la causa fuere la falta del contratista a las condiciones del contrato, la acción de indemnización durara quince años.

El Tribunal Supremo de Puerto Rico ha señalado que el concepto de ruina no contempla toda clase de vicios de construcción. *Maldonado Pérez v. Las Vegas Development* 111 DPR 573, 575 (1981). Incluso en su interpretación más amplia, se parte de la idea de que existen defectos graves y otros que no lo son; estos últimos, por no tener esa gravedad, no están incluidos dentro de lo que contempla el Art. 1483. *Íd.* Asimismo, nuestro máximo foro ha categorizado cuatro clases de ruinas, estas son: la ruina total, ruina parcial, amenaza de ruina y la ruina funcional. *Rivera v. A & C Development Corp* 144 DPR 450, 466 (1997).

La ruina funcional surge bajo la teoría de los "graves defectos" entiéndase aquellos que no arruinan elementos esenciales del edificio, pero, que afectan seriamente su uso y disfrute. *Maldonado Pérez v. Las Vegas Development, supra,* pág. 575. Un edificio será considerado bajo ruina funcional si se cumple por lo menos con uno de los siguientes criterios: "amenaza o la seguridad pública o a la

estabilidad del edificio; que le causen perjuicio considerable al dueño; que tornen la obra en impropia para el uso que se le destina o cuando la medida de imperfecciones que cabe esperar en una construcción". *Fantauzzi v. Pleasant Homes, Inc.*, 113 DPR 132, 135 (1982). Además, no se considerará un vicio de construcción protegido por el plazo decenal si incide sobre elementos del edificio que era de esperarse que tuviera una vida útil menor a los diez (10) años. *Íd.*

Destacamos, que la evaluación del estado de ruina de un edificio se tiene que hacer *caso a caso* y dependerá principalmente del estudio evolutivo del arte de la construcción. *Maldonado Pérez v. Las Vegas Development, supra,* pág. 576. (Énfasis suplido). No obstante, como parte del desarrollo doctrinal elaborado por el Tribunal Supremo se han expresado en casos particulares que configura ruina o no bajo el Art. 1483.

En *Maldonado Pérez v. Las Vegas Development, supra* se instó una querella en el DACO después de nueve (9) años después de la compraventa del inmueble debido a que la casa contenía grietas mayores de dieciseisavo (1/16) de pulgadas. El Tribunal determinó "que las gritas del piso surgidas en este caso a los casi diez años de construirse la vivienda no están comprendidas dentro del concepto ruina encarnado en el Art. 1483. El defecto no reviste la gravedad necesaria. El tiempo de su aparición, además, fue tardío". *Id.*, pág. 580. Por otro lado, en *Interstate Gen. Corp. v. Soto* 113 DPR 298, 301 (1982) el Tribunal determinó que "[l]as circunstancias de este caso no nos persuaden de que deba extenderse a las filtraciones ocurridas en este caso la responsabilidad decenal".

Por último, si ha vencido el plazo reglamentario tiene que desfilar prueba demostrativa de que el defecto es de tal magnitud que su presencia para el tiempo en que se revela excede la medida de lo permisible técnicamente. *Interstate Gen. Corp. v. Soto* 113 DPR

298, 301 (1982). El defecto tiene que corresponder a un vicio de construcción o diseño. *Íd.* La decisión sobre estos extremos debe fundarse en prueba sustancial. *Íd.*

### B. Reglamento para Regular las Distintas Actividades que se llevan a cabo en el Negocio de la Construcción de Viviendas Privadas en Puerto Rico.

El Reglamento Para Regular las Distintas Actividades que se llevan a cabo en el Negocio de la Construcción de Viviendas Privadas en Puerto Rico, Reglamento Núm. 2268, Departamento de Estado, 17 de agosto de 1977, pág. 1 define los defectos de construcción como:

> [C]ualquier anormalidad, defecto, falta de accesorios, falla, deterioro prematuro, mal funcionamiento, inexactitud en las medidas o cualquiera otra condición más allá de las tolerancias normales permisibles que pueda sufrir la estructura de vivienda o el área en que está este enclavada o cualquier otro vicio o condición que exceda la medida de las imperfecciones que cabe esperar en una construcción sin que se pueda imputar a una fuerza mayor y/o fenómeno natural, y que no se deban a maltrato, alteraciones, falta de mantenimiento, ni desgaste normal, siempre y cuando se notifiquen al urbanizador y/o constructor dentro del periodo de tiempo que establece el Art. 10 (j) de este reglamento.

El Reglamento en su sección diez (10) establece cuáles son las practicas indeseables que puede incurrir un constructor o urbanizador. En específico en su inciso (j) señala que las grietas en diferentes estructuras de la casa no pueden ser mayores de 1/16 [pulgadas] de amplitud. Reglamento para Construir Viviendas Privadas, *supra*, pág. 18-19. Asimismo, en su inciso (j)(12) habla sobre las filtraciones en los techos. Tanto para las grietas, como para las filtraciones se establece un plazo de dos (2) años para hacer la reclamación a partir del otorgamiento de la escritura de compraventa. *Id.*, pág. 16.

Por el contrario, en *Rivera v. A & C Development Corp, supra*, pág 465 el Tribunal expuso que:

> El hecho de que cierto defecto conste enumerado en la Sec. 10 (j) del Reglamento del Negocio de la

Construcción, *supra,* no excluye que éste pueda catalogarse como un defecto causante de la ruina de una edificación y que, por lo tanto, aplique el plazo de garantía de diez (10) años estipulado en el Art. 1483 del Código Civil, *supra,* de cumplirse con sus requisitos probatorios.

### C. Obligaciones recíprocas

El Art. 1042 del Código Civil de 1930 dispone que "las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia". 31 LPRA sec. 2992. Dentro de los diferentes tipos de obligaciones se encuentran las unilaterales y las bilaterales. Como regla general, dentro de las obligaciones reciprocas, cuando uno de los obligados no cumple, puede instar una acción resolutoria del contrato o exigir su cumplimiento, junto con el resarcimiento de daños y el abono de intereses en ambos casos. 31 LPRA sec. 3052.

La Prof. Margarita García Cárdenas citando a él tratadista Lacruz Berdejo expone en cuanto a la acción resolutoria que ¨la doctrina jurisprudencial ha sido siempre notablemente más *restrictiva* e incluso ha calificado la resolución como *excepcional,* en atención al principio *pacta sunt servanda* y al de conservación del contrato, y a razones de equidad¨. M. García Cárdenas, *El nuevo derecho de obligaciones y contratos: Código Civil de 2020,* 1ª ed. rev., San Juan, Ed. MJ Editores, 2021, pág. 101-102. (Énfasis suplido). Asimismo, Luis Diez – Picazo y Gullón citado con aprobación en *Álvarez v. Rivera,* 165 DPR 1, 21 (2005) señalan que ¨*únicamente si el cumplimiento parcial o defectuoso implica la frustración de la finalidad contractual para la parte perjudicada procederá, entonces, la resolución del contrato*¨.

En el caso normativo de *Ramírez v. Club Cala de Palmas,* 123 DPR 339, 348 (1941) el Tribunal Supremo expuso que se tiene que:

[D]istinguir que no todo incumplimiento de una obligación reciproca conlleva efectos resolutorios. Para que así sea, es menester que la obligación incumplida

sea esencial o que su cumplimiento constituya el motivo del contrato para la otra parte. Por el contrario, el incumplimiento de las obligaciones accesorias o complementarias --que no constituyen el verdadero motivo para celebrar el contrato y que se incorporan al mismo por completar o aclarar las estipulaciones de los contratantes-- puede dar lugar a una acción de daño y perjuicios o a cualquiera otra que justifique las circunstancias de cada caso, pero nunca a la acción resolutoria aludida.

### D. Contrato de Transacción Judicial

El contrato surge desde que varias personas acceden a obligarse respecto de otra u otras, a prestar un servicio o dar algo. 31 LPRA sec. 3371. Un contrato se considera perfeccionado cuando se lleva a cabo el consentimiento y desde entonces vinculan. 31 LPRA sec. 3375. Para que se constituya un contrato se tiene que dar los siguientes requisitos: consentimiento, objeto y causa. 31 LPRA sec. 3391.

El Art. 1709 del Código Civil de 1930 establece que ¨[l]a transacción es un contrato por el cual las partes dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen termino al que había comenzado¨. 31 LPRA sec. 4821. Para que surja un contrato de transacción se tiene que cumplir tres (3) elementos estos son: (1) la presencia de una controversia (2) el acuerdo entre las partes en eliminar o superar la controversia y (3) la exigencia de concesiones recíprocas. *Rodríguez v. Hospital,* 186 DPR 889, 903 (2012).

El antes mencionado contrato tiene dos (2) modalidades este puede ser judicial o extrajudicial. *Negrón Vélez v. ACT*, 196 DPR 489, 505 (2016). El contrato de transacción extrajudicial se configura cuando antes de que surja el pleito las partes eliminan la controversia mediante acuerdo. *Id.* Además, se puede dar el caso de que una vez comenzado el pleito se lleva a cabo la transacción sin la intervención del tribunal. *Id.* Por otro lado, en su vertiente judicial la disputa inicia en el pleito y una vez iniciado este, las partes se

ponen en común acuerdo para eliminar la controversia y solicitan incorporar el acuerdo al proceso judicial en curso. *Id.* Asimismo, resaltamos que en el contrato de transacción judicial se tiene que someter ¨*al conocimiento y aprobación del juez lo estipulado e incluso se afirma la necesidad de incorporarla al pleito iniciado*¨. *Rodríguez v. Hospital, supra,* pág. 905. (Énfasis suplido). Por consiguiente, en el caso de llevarse a cabo una transacción judicial esta tendrá el efecto de cosa juzgada y procederá la vía de apremio para dar su cumplimiento. 31 LPRA sec. 4827.

### E. Declaración Unilateral de Voluntad.

El legislador no incorporo la figura de declaración unilateral de voluntad en el Código Civil de 1930.  En el derecho puertorriqueño por primera vez se elabora esta figura en el caso de *Ramírez Ortiz v. Gautier Benítez*, 87 DPR 497 (1963). Este caso aborda la declaración unilateral de voluntad y señala que el derecho reconoce como obligatoria una promesa hecha de manera individual, autónoma y gratuita, sin necesidad de aceptación, mediante la cual una persona se compromete a dar, hacer o no hacer algo en beneficio de otra. Está promesa puede generar para el beneficiario el derecho a exigir su cumplimiento o a reclamar una indemnización por los daños y perjuicios sufridos si actuó confiado en ella. *Id.*, pág. 508.

El Tribunal Supremo en el caso de *Ortiz v. PR Telephone*, 162 DPR 715, 726 (2004) establece los requisitos que deben concurrir para que aplique la doctrina unilateral de voluntad, estos son los siguientes:

> (1) la sola voluntad de la persona que pretende obligarse; (2) que dicha persona goce de capacidad legal suficiente; (3) que su intención de obligarse sea clara; (4) que la obligación tenga objeto; (5) que exista certeza sobre la forma y contenido de la declaración; (6) que surja de un acto jurídico idóneo, y (7) que el contenido de la obligación no sea contrario a la ley, a la moral ni al orden público.

### F. Daños

El Artículo 1802 del Código Civil de 1930, dispone que "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." 31 LPRA sec. 5141. La norma amplia y general del Art. 1802 del Código Civil, *supra*, le otorga al juzgador vasto margen para dar contenido concreto al momento de dictar sentencia. *López v. Porrata Doria*, 169 DPR 135, 152 (2006). Para alcanzar dicha finalidad, este está llamado a interpretar la norma a partir de los hechos a los que se enfrenta. Íd.

Así pues, es norma reiterada que sólo procede la reparación de un daño cuando se demuestren los siguientes elementos indispensables: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante. *Inmob. Baleares et al. v. Benabe et al.*, 214 DPR 1109, 1125 (2024); *Sucn. Mena Pamias et al. v. Jiménez et al.*, 212 DPR 758, 768 (2023); *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010). Como regla general, en los casos de daños y perjuicios el demandante tiene el peso de la prueba para demostrar que el demandado fue negligente y dicha acto u omisión le ocasionó daños. *Matos v. Adm. Servs. Médicos de P.R.*, 118 DPR 567, 569 (1987).

Nuestro más alto foro local ha definido la culpa o negligencia como la falta del debido cuidado, que consiste en no anticipar ni prever las consecuencias racionales de un acto o su omisión al que una persona prudente y razonable habría previsto en las mismas circunstancias. *Mena Pamias et al. v. Jiménez et al.*, *supra*, pág. 768; *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 976-977 (2021). Ahora bien, el nexo causal no se refiere a toda causa o condición sin la cual no se hubiera producido el resultado, sino

la que ordinariamente lo produce, según la experiencia general. *Mena Pamias et al. v. Jiménez et al., supra,* pág. 768; *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 484-485 (2022); *Soc. de Gananciales v. Jerónimo Corp.*, 103 DPR 127, 134 (1974). Por tanto, se requiere que entre dicho acto culposo o negligente y el daño sufrido deba existir una relación entre el daño y la consecuencia razonable, común y natural de la acción u omisión imputada al demandado. *Cruz Flores et al. v. Hosp. Ryder et al., supra,* pág. 482; *Montalvo v. Cruz*, 144 DPR 748, 756-757 (1998).

### G. Apreciación de Prueba Pericial

Los foros apelativos deben mostrar gran deferencia al foro primario debido a que es este quien juzga los hechos, dado a que se encuentra en una mejor posición para evaluar la credibilidad de un testigo. *Rivera Figueroa v. AAA*, 177 DPR 345, 356 (2009). Asimismo, se le tiene que dar respeto a la adjudicación de credibilidad al juez de instancia cuando determina los hechos, debido a que los tribunales de apelaciones solo tienen récords mudos y silentes. *Id.* Por consiguiente, se ha "establecido que en asuntos de credibilidad de la prueba concederemos gran deferencia a las determinaciones de hechos efectuadas por los tribunales de instancia". *Trinidad v. Chade*, 153 DPR 280, 292 (2001)

No obstante, a manera de excepción si el juez de instancia tiene pasión, prejuicio o parcialidad o ha incurrido en un error manifiesto el tribunal de apelaciones está en la posición de descartar las determinaciones de hechos. *Rivera Figueroa v. AAA*, *supra*, pág. 356; *Trinidad v. Chade, supra*, pág. 292.

En el caso normativo de *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 772 (2013) se expone que son raros los casos en que un foro apelativo ha encontrado que el juez de instancia ha incurrido en pasión, prejuicio o parcialidad. En el antes mencionado caso se

expone que la pasión, prejuicio o parcialidad es similar a la Regla 63 de Procedimiento Civil en torno a la inhibición de un juez. Ahora bien, aunque el mecanismo es similar, el foro al que se acude es diferente. Más adelante el caso señala que:

> Lo ideal es que, cuando se conozcan de antemano las razones por las cuales un juez o una jueza no pueda adjudicar imparcialmente una controversia, se utilicen los mecanismos establecidos por la Regla 63. De igual forma, cuando son la conducta y las expresiones del juez o la jueza de instancia durante el pleito las que demuestran la existencia de pasión, prejuicio o parcialidad, corresponde a los tribunales apelativos, en su función revisora corregir la situación. *Id.*, pág. 777.

En lo que respecta al error manifiesto este se ha utilizado para descartar la apreciación de prueba hecha por foro primario. Id., pág. 780. "Se podrá descartar las determinaciones de hecho cuando no son razonablemente representativos de la prueba que se desfilo en el juicio o cuando las conclusiones de hechos están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". L. Rivera Román, *Perspectivas en la Práctica Apelativa: 25 años del Tribunal de Apelaciones de Puerto Rico*, 1.ª ed. rev., San Juan, Ed. Situm, pág. 116.

Ahora bien, cuando las determinaciones están fundamentadas en prueba pericial y documental el Tribunal de Apelaciones se encuentra en la misma posición que el foro primario. *Rios Ruis v. Mark*, 119 DPR 816, 820 (1987); *Cruz v. Centro Médico de P.R.*, 113 DPR 719, 722 (1983).

**III**.

El caso antes nos ha sido uno extenso cuyo inicio se remonta con la presentación de la Demanda el 18 de septiembre de 1990. Por consiguiente, han pasado alrededor de treinta y seis (36) años de este caso activo en los tribunales.   Los Apelantes en su alegato inicial presentaron una causa de acción en daños e incumplimiento de contrato en contra de su aseguradora Universal debido a que su hogar sufrió un menoscabo por el huracán Hugo y unos sismos que

también ocurrieron para esas fechas. Posteriormente, el 25 de marzo de 1991, el Apelante presentó Demanda Enmendada para instar una nueva causa de acción en contra de GARITA, TOLEC y TOSI. Posteriormente, la demanda se ha enmendado en seis (6) ocasiones adicionales para añadir nuevas partes que a juicio de los Apelantes le respondían el Sr. Raúl Martin, ROYAL, NATIONAL y EAGLE. Asimismo, en su última demanda enmendada instaron otra causa de acción por los daños que alegadamente sufrió su hija mientras vivía en su hogar.

A continuación, analizaremos los errores presentados por los Apelantes en su escrito.

El primer señalamiento de error gira en torno a que el Tribunal de Primera Instancia desestimó su reclamación bajo el Art. 1483 del Código Civil de 1930 debido a los vicios de diseño y construcción que tenía el inmueble y que causaron una ruina funcional por exceder la medida que cabe esperar en una construcción de esa calidad y precio.

La ruina funcional puede surgir dentro de uno de los siguientes cuatro (4) escenarios que haya: (1) amenaza a la seguridad pública o a la estabilidad del edificio (2) que le causen perjuicio considerable al dueño (3) que tornen la obra en impropia para el uso que se le destina o (4) cuando la medida de imperfecciones que cabe esperar en una construcción.

Los Apelantes identificaron la alegada ruina funcional dentro de esta última instancia. Según su Recurso Apelativo y lo que se desprende de la transcripción de la prueba algunos defectos que tiene su inmueble se componen de grietas y filtraciones. Como parte de su Apelación resaltaron que su reclamación no es una al amparo de la Ley Núm. 130 – 1967 ni su reglamento, el cual establece un plazo de caducidad de dos (2) años para reclamaciones de

filtraciones y grietas desde la otorgación de la compraventa.[55] En su

recurso nos citan el caso de *Rivera v. A & C Development, supra,* el

cual establece que, aunque haya transcurrido el plazo del

Reglamento para Construir Viviendas Privadas, *supra,* esto no

excluye que se pueda instar una acción bajo la garantía decenal.

Ahora bien, dejándonos llevar por el precedente establecido en el

caso antes mencionado y tomando como bueno que se puede instar

las acciones antes mencionadas bajo el plazo decenal. Nos resta

evaluar a base de la prueba testificada en el juico si el tamaño de

las grietas excedía lo que establece el Reglamento del DACO en torno

a que no pueden exceder de un dieciseisavo (1/16) de pulgada para

que sea considerado como una práctica no deseada de la

construcción.  Según el testimonio emitido en el juicio en su fondo

el Sr. Aguilar testificó que la habitación principal de la casa

entiéndase el *master,* era el lugar en donde se encontraba la grieta

más grande de la casa.[56] Para el testigo José Antonio Orta Carmona

el cual fue inspector de viviendas bajo el DACO testificó que:

> *[T]odas las grietas*, aun en el piso, en las paredes, todas las que evaluamos y pudimos apreciar en nuestra humilde presencia en esa propiedad eran menores de 1/16 de pulgada. El grueso lo verificamos con una moneda, el grueso de una moneda de cinco centavos es aproximadamente 1/16. Ni una moneda de diez centavos entraba y es menor que la de cinco centavos para ser más gráfico.[57] (Énfasis suplido).

Por lo tanto, la medida de la grieta no excede lo que constituye una

práctica indeseada según el Reglamento para Construir Viviendas

Privadas, *supra.*  Además, según el perito e Ing. Ángel Herrera

---

[55] Las filtraciones surgen debido a que no se impermeabilizo el techo por un tiempo de doce (12) años.
[56] Véase, Transcripción del Juicio en su Fondo del 14 de septiembre de 2010, pág. 7.
[57] Véase, Transcripción del Juicio en su Fondo del 22 de noviembre de 2013, pág. 36.

explicó que las grietas surgieron debido a la "retractación y temperatura de hormigón y cambios de temperatura".[58]

Respecto a otros de los defectos y vicios que fueron señalados por los Apelantes en su Recurso fue el hormigón deficiente, el cual fue realizado por el Ing. José Antonio Acevedo Alfau mediante unas exploratorias y el cual obtuvo un resultado por debajo de los requeridos por los planos.  Según se desprende de la Sentencia emitida por el Tribunal de Primera Instancia el 26 noviembre de 2018, el juez no le dio credibilidad a dicho perito por la forma de testificar y por las pruebas que realizó.[59]  No obstante, si le dio credibilidad al perito Ing. Ángel Herrera.[60] El perito Herrera, como parte de su testimonio, manifestó que "[l]as exploratorias realizadas han debilitado la estructura y paredes de bloques llevando la residencia a una condición peor de la condición previa". [61] Además, dicho perito planteó que se tenían que seguir unas guías del *American Concrete Institute* tituladas "Guías para obtener testigos e interpretar los resultados de la resistencia a comprensión". Estas guías tenían que ser utilizadas para medir la resistencia del hormigón. Según el perito las guías señalan que "los testigos [cores] los tienen que tomar personas que estén certificadas por el Instituto Americano de Concreto (…). Tiene que decir a qué hora se tomaron, cuando se tomaron, de que tamaño se tomaron, como se probaron".[62] Del informe brindado por el perito de la parte Apelante no se desprende ninguno de los criterios antes mencionados. Por lo tanto, se realizaron pruebas para probar unos vicios de

---

[58] Véase, Transcripción del Juicio en su Fondo del 18 de noviembre de 2023, pág. 39. La retractación ¨significa que el hormigón con el tiempo va disminuyendo con el tamaño¨. Id., pág. 40.
[59] Véase Apéndice del Recurso de Apelación en la pág. 493.
[60] *Id.* pág. 494.
[61] Véase, Transcripción del Juicio en su Fondo del18 de noviembre de 2013, pág. 20.
[62] *Íd.*

construcción por una persona que no tenía las credenciales para realizar dicha encomienda. El error señalado no fue cometido.

El segundo y tercer señalamiento de error se analizarán en conjunto debido a que implican la misma figura jurídica que es la acción resolutoria. Los Apelantes plantearon como segundo error que erró el Tribunal de Primera Instancia en desestimar la reclamación debido a que, no se construyó el inmueble conforme a los planos y el tercer error gira en torno a que erró el Tribunal de Primera Instancia en desestimar la reclamación por incumplimiento de contrato de transacción judicial al negarse TOSI, Haydee, Garita y TOLEC a comprarle el inmueble.

El Art. 1077 del Código Civil de 1930 expone que dentro de las obligaciones reciprocas, cuando uno de los obligados no cumple, puede instar una acción resolutoria del contrato o exigir su cumplimiento, junto con el resarcimiento de daños y el abono de intereses en ambos casos. 31 LPRA sec. 3052.

El segundo señalamiento de error es discutido someramente dentro del Recurso Apelativo, el cual se hace un poco difícil de identificar específicamente cuales son los elementos que no están contemplados en el plano y por consiguiente se busca la resolución del contrato compraventa. Entre los que inferimos que no se hace de acuerdo con los planos según los Apelantes son la losa de techo el cual se le hace las pruebas de resistencia de hormigón, los refuerzos de acero en paredes de bloque y los amarres entre paredes de bloque. En torno a la losa de techo, como destacamos anteriormente, se utilizó el mecanismo de exploratoria el cual fue realizado por una persona que no estaba acreditada por el *American Concrete Institute* y no plasmó en su informe el cómo se debe llevar a cabo las exploratorias según las guías. Por lo cual, no se le puede dar credibilidad a dicho estudio.

Relacionados a los amarres entre paredes de bloque, se le realizaron las siguientes preguntas al Ing. Martínez Cruzado:

> P Dígame si es o no cierto que para 1980 no se requería en Puerto Rico, bajo el código del setenta y pico, que las paredes de bloque estuvieran amarradas a las paredes de concretos.
> R El ACI no indica que eso sea obligatorio.
> P Seguro que no. Si es no hacía falta. ¿Y sabe por qué no hacía falta? Porque aquí no se construía así en esa época. Y dígame si es o no cierto que, inclusive, ahora tampoco muchas veces se construye así. ¿Verdad que no?
> R Lo de las colas de pato, es muy raro ver eso.[63]

Según surge de la transcripción, los constructores se dejaron llevar por lo que impone el Código de Construcción de Puerto Rico. Debido a que lo requerido por los planos era raro verlo al momento de la construcción del inmueble, y todavía seguía siendo raro al momento que se lleva a cabo en el juicio en el 2010.  El segundo error señalado no fue cometido.

En el tercer señalamiento de error la acción resolutoria gira en torno a un alegado contrato de transacción judicial. En su Recurso de Apelación, los Apelantes expusieron que GARITA, TOLEC y TOSI como Aguilar aceptaron las ofertas transaccionales. En el expediente del caso no surge que se haya concretizado algún contrato de transacción judicial con la *aprobación* del juez. (Énfasis nuestro). Por lo tanto, no puede haber un contrato de transacción judicial. No obstante, los Apelantes buscan la resolución de un contrato inexistente y además reclaman daños por un algo que nunca tuvo vida jurídica. El tercer error señalado no fue cometido.

En lo que concierne al cuarto señalamiento de error, el cual se trae el Sr. Martin para que responda bajo la doctrina unilateral de voluntad, debido a que según los Apelantes certificó falsamente que el inmueble se hizo de conformidad con los planos, los Apelantes citan el caso de *Ortiz v. Puerto Rico Telephone*, *supra,* pero, no nos

---

[63] Véase, Transcripción del Juicio en su Fondo del 20 de septiembre de 2010, pág. 49

ponen en posición de cómo es que aplica dicha doctrina en el caso ante nuestra consideración. Además, omiten en su análisis los criterios esbozados en *Ortiz v. Puerto Rico Telephone, supra,* y se limitan a una mera aleación de la aplicación del caso. En su Recurso señalan que "Martin, al igual que Tosi, certificó falsamente al dorso de su solicitud de permiso de uso que el inmueble había sido construido de conformidad con los planos y especificaciones cuando ello ha resultado patentemente falso".[64] (Negrillas y subrayado omitido).

Los requisitos según establecidos en el caso de *Ortiz v. PR Telephone*, 162 DPR 715, 726 (2004) son los siguientes:

> (1) la sola voluntad de la persona que pretende obligarse; (2) que dicha persona goce de capacidad legal suficiente; (3) que su intención de obligarse sea clara; (4) que la obligación tenga objeto; (5) que exista certeza sobre la forma y contenido de la declaración; (6) que surja de un acto jurídico idóneo, y (7) que el contenido de la obligación no sea contrario a la ley, a la moral ni al orden público.

A nuestro entender no puede ser de aplicación la doctrina unilateral de voluntad en la certificación de los planos, debido a que no existe certeza sobre la forma y contenido de la declaración. En el caso de *Ortiz v. PR Telephone, supra* se indicó mediante una carta que responderán por cualquier daño que ellos hubieran ocasionado. En el caso ante nuestra consideración el plano pudiese ser la forma, pero el contenido de la declaración no puede ser una especificación que se preste a márgenes de errores como las hay en la industria de la construcción y se consideraran de todos modos satisfactorios. Resaltamos de nuevo el caso *de Maldonado v. Pérez, supra,* el cual describió la construcción como un arte que va evolucionando. El cuarto error señalado no fue cometido.

En el quinto señalamiento de error los Apelantes señalaron que erró el Tribunal de Primera Instancia al desestimar la causa de

---

[64] Véase Recurso de Apelación en la pág. 16.

acción de su hija menor por cómo le afectó la condición de ruina del inmueble. Según se desprende del expediente, las angustias mentales sufridas por la Sra. María Teresa Aguilar giran en torno a "vergüenzas e inconvenientes debido a la condición ruinosa del inmueble, impidiendo ello que se sintiera en la libertad de invitar amistades a su residencia, dormitorio y/o celebrar fiestas en ellas (…) ".[65] Asimismo, en el juicio en su fondo la Sra. María Teresa Aguilar testificó y a preguntas de su abogado el Lcdo. Gallardo le realizaron las siguientes:

> P ¿A través de su infancia u adolescencia, con cuánta frecuencia, si alguna, tenía usted amistades en la casa?
> R Nunca.
> P ¿Y por qué…?
> R Yo nunca traía amigas a la casa. No se me permitía traer amigas a la casa.[66]

No obstante, como parte de la prueba testifical existe una incongruencia de la Sra. María Teresa Aguilar tanto de la alegación como del testimonio vertido en corte con el testimonio del Sr. Aguilar en donde admite que "*durante una fiesta de mi hija* una niña resbalo y cayo reventadita en el piso. . .".[67] (Énfasis suplido). Por consiguiente, sí se realizaban actividades sociales en la casa en la que participada su hija. No existe daño concreto alguno. El error señalado no fue cometido.

El último y sexto señalamiento de error no será atendido debido a que de la sentencia recurrida no se desprende que haya algún fallo en torno a una determinación sobre rebeldía. Según el tratadista Hernández Colón "téngase presente que el tribunal de apelación no considerara un planteamiento en cuanto a la parte de la sentencia de la cual no se haya recurrido". R. Hernández Colón,

---

[65] Véase Apéndice del Recurso de Apelación en la pág. 288.
[66] Véase, Transcripción del Juicio en su Fondo del 23 de septiembre de 2010, pág. 43.
[67] Véase, Transcripción del Juicio en su Fondo del 14 de septiembre de 2010, pág. 50.

*Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6.ª ed. rev. San Juan, Ed. Lexis Nexis, 2017, pág. 478.

**IV**.

Por los fundamentos antes expuestos se confirma la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones